# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0122
════════════

VENTURE COTTON COOPERATIVE AND NOBLE AMERICAS CORP., PETITIONERS,

v.

SHELBY ALAN FREEMAN, ET AL., RESPONDENTS

════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE ELEVENTH DISTRICT OF TEXAS
════════════════════════════════════════

**Argued January 9, 2014**

JUSTICE DEVINE delivered the opinion of the Court.

Two groups of cotton farmers sue to rescind contracts in which they agreed to sell cotton through a cooperative marketing pool. The farmers allege that they were fraudulently induced to join the cooperative and seek damages, declaratory relief, and attorney's fees under various statutes. Because the agreements provide for arbitration of all disputes under the Federal Arbitration Act, 9 U.S.C §§ 1-16, the cotton cooperative moved to stay the litigation and compel arbitration. This appeal is from the trial court's interlocutory order, denying those motions. *See* TEX. CIV. PRAC. &

REM. CODE § 51.016 (permitting interlocutory appeals of orders denying arbitration under the FAA).[1]

The trial court has concluded that the parties' agreement to arbitrate should not be enforced because it is unconscionable, and the court of appeals has affirmed the trial court's order denying arbitration. 395 S.W.3d 272, 275-76 (Tex. App.–Eastland 2013). The court of appeals reasons that the arbitration agreement is unconscionable because it prevents the farmers from pursuing the statutory remedies and attorney's fees alleged in their pleadings. *Id*. at 277. We conclude that this limitation of statutory remedies is insufficient to defeat arbitration under the FAA and accordingly reverse the court of appeals' judgment. We conclude further that, because the court has not fully considered the parties' arguments on the issue of unconscionability, the case should be remanded to the court of appeals.

## I. Background

Venture Cotton Cooperative is a cotton cooperative-marketing association, incorporated in Texas, and managed by Noble Americas Corp., a foreign corporation. In 2010, Venture operated a pool for the exclusive sale and marketing of its members' cotton production. Venture promoted this pool through various cotton-gin companies, which arranged meetings with local farmers. Venture would explain the pool's terms and solicit membership at these meetings. One such meeting was arranged by Ocho Gin Company in Seminole, Texas.

---

[1] We have jurisdiction to hear an appeal from an interlocutory order denying arbitration when the court of appeals' decision conflicts with prior precedent. *See Forrest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.8 (Tex. 2008) (noting that our jurisdiction over the interlocutory appeal depends on a dissent or decisional conflict); *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 988 S.W.2d 731, 733 (Tex. 1998) (per curiam) (same).

Farmers, who agreed to join the 2010 pool, signed Venture's Membership and Marketing Agreement and other related documents. These documents asked each farmer to designate the acreage committed to the pool and to estimate the production Venture might expect to market. After the meeting in Seminole, Venture left copies of these documents with Ocho for farmers to execute, should they decide to join the cooperative. Several farmers decided to join the pool.

During the growing season, the price of cotton rose significantly. By harvest, Venture had become concerned that members of the pool might be tempted to sell their committed production on the open market. This concern blossomed into a dispute with some member-farmers over the quantity of cotton committed to the pool and ultimately led to a lawsuit by Alan Freeman and Perry Brewer, two prominent cotton farmers in Gaines County, Texas.[2]

In their lawsuit, Freeman and Brewer asserted claims for fraud, negligent misrepresentation, breach of fiduciary duty, mutual mistake, civil conspiracy and violations of the Texas Consumer Protection—Deceptive Trade Practices Act, and the Texas Free Enterprise and Antitrust Act of 1983. Freeman and Brewer also sought declaratory and injunctive relief and attorney's fees under Civil Practice and Remedies Code section 38.001. Shortly after filing this suit, another group of farmers filed a second suit against Venture and the other defendants in Gaines County, asserting similar claims.[3]

---

[2] The lawsuit was styled *Alan and Christine Freeman d/b/a Alan Freeman Farms, J.V., and Perry and Kathy Brewer d/b/a PDB Joint Venture v. Venture Cotton Cooperative, Noble Americas, Corp., Ocho Gin Co. and Ocho Management Corp.*

[3] The second lawsuit was styled *Roger Neitsch, Gregory Upton, Wayne Upton, Anderson Upton, Jud Cheuvront d/b/a L&ME, Inc. and JDC Farms, Max McGuire, Raymond McPherson, Abe Froese d/b/a BAC Farms, Gerardo Froese d/b/a Gerardo Froese Farms, George P. Froese d/b/a George P. Froese Farms, Neil Enns, David Bergen, Bradley Peters, Peter Neustaeter Jr., Wilhelm Friesen, Cornelius Banman, Gerard Neustaeter, Peter Friesen, Heinrich Friesen,*

3

Venture generally denied the allegations in both suits and moved to stay the litigation and compel arbitration under the United States Arbitration Act (also known as the Federal Arbitration Act or FAA). 9 U.S.C §§ 1-16. The farmers' membership and marketing agreements with the cooperative provided for the arbitration of all disputes under the FAA and the arbitration rules of the American Cotton Shippers Association (ACSA). The arbitration provision referred to the farmers as "producers" and provided in pertinent part:

• All disputes will be resolved pursuant to binding arbitration pursuant to the arbitration rules of the American Cotton Shippers Association.

• The site of the arbitration shall be either Houston, Texas, or Memphis, Tennessee, as chosen by Venture, unless otherwise directed by the arbitrator(s).

• The cotton sold herein is purchased for shipment out of state of origin in interstate or foreign commerce.

• Any court having or claiming jurisdiction, whether state or federal, shall apply the substantive provisions of the United States Arbitration Act . . . .

• In the event of a breach of this Agreement by Producer, Producer agrees to pay all arbitration and court costs, if any, and the reasonable attorney's fees and litigation and arbitration expenses of Venture.

The farmers opposed Venture's motions, asserting a number of reasons why the arbitration agreement was unconscionable and should not be enforced. The trial court scheduled an evidentiary hearing.

At this hearing, Freeman and Brewer testified about their decisions to join the pool. According to their testimony, they had a question about "overages" a few days after Venture's

---

*Abe S. Peters, Isaak T. Fehr, Jacob Peters, Abe Loewen, Isaak Wiebe, Ben Neudorf, and Rudolph Peters v. Venture Cotton Cooperative, Noble Americas, Corp., Ocho Gin Co. and Ocho Management Corp.*

4

marketing presentation. "Overages" refers to cotton produced on designated land in excess of the estimate given by a farmer at the time of land's commitment to the pool. Freeman and Brewer's question, which they directed to Ocho, was whether overages were included in the pool under Venture's contracts. An Ocho representative called Venture with this question and allegedly learned that the disposition of overages was at the farmer's discretion, that is, the farmer could elect to sell overages under the agreement or not.

Venture denies making any such representations. It also argues that its contract clearly calls for the commitment of acres, not bales, making overages subject to the agreement. In any event, Freeman and Brewer maintain that they signed with the cooperative after being led to believe that they would control overages.

After considering the parties' pleadings, motions, responses, and briefs, as well as evidence presented at the hearing, the trial court refused to stay the litigation or compel arbitration, finding the arbitration agreements unconscionable. Findings of fact and conclusions of law were requested and filed, but these findings and conclusions shed no light on the court's reasoning.[4]

Venture filed interlocutory appeals in both cases, and the court of appeals consolidated them for decision. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (permitting interlocutory appeals of orders denying arbitration under the FAA). Agreeing that the arbitration agreements were unconscionable, the court affirmed the trial court's order denying Venture's motion to compel. 395 S.W.3d at 275-76. The court reasoned that the agreements were unconscionable in two respects: (1)

---

[4] The trial court's finding of fact stated: "The arbitration clause sought to be enforced is unconscionable." Its conclusion of law stated: "The arbitration clause sought to be enforced is unenforceable because it is unconscionable."

5

they forced the farmers "to forego substantive rights and remedies afforded by statute," *id*. at 275, and (2) they were one-sided because they allowed Venture to recover its attorney's fees, if the farmers breached the contract, but did not provide reciprocal rights to the farmers, *id*. at 276.

## II. The FAA and State Law

Although the Federal Arbitration Act preempts state law that conflicts with its objectives, *Southland Corp. v. Keating,* 465 U.S. 1, 10-17 (1984), state law remains relevant to declare an arbitration agreement itself unenforceable on "such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2 (the saving clause). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). In determining the arbitration agreement's validity then, a court may not construe the agreement differently from how it would construe contracts generally under state law, nor may a court rely on the uniqueness of an arbitration agreement as a basis for a state-law holding that enforcement would be unconscionable. *Perry v. Thomas*, 482 U.S. 483, 492 (1987). But if the circumstances would render any contract unconscionable under Texas law, they are appropriate to invalidate the agreement to arbitrate as well. *In re Poly-America,* 262 S.W.3d 337, 348 (Tex. 2008).

Special state rules for interpreting arbitration agreements cannot coexist with the FAA because Congress intended the act as its response to a "longstanding judicial hostility to arbitration

6

agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000). Under the FAA, an agreement to arbitrate that is valid under general state law principles and involves interstate commerce is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. A party seeking to compel arbitration under the FAA, however, must establish that the dispute falls within the scope of an existing agreement to arbitrate. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Upon such proof, the burden shifts to the party opposing arbitration to raise an affirmative defense to the agreement's enforcement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The FAA thus requires a court to make at least a threshold determination of arbitrability—that the dispute is subject to an enforceable agreement to arbitrate—before enforcing the arbitration agreement by compelling arbitration or staying litigation. 9 U.S.C. §§ 3-4.[5]

## A. Unconscionability

The farmers do not dispute that their claims are covered by the agreements with Venture and subject to arbitration under the FAA, if their arbitration agreement itself is valid and enforceable. They contend, of course, that it cannot be enforced because the agreement is one-sided and grossly unfair in several respects. Unambiguous contracts, however, are presumed to reflect the intent of the contracting parties and are generally enforced as written "regardless of whether one or more of the parties contracted wisely or foolishly, or created a hardship for himself." *Wooten Props., Inc. v. Smith*, 368 S.W.2d 707, 709 (Tex. Civ. App.–El Paso 1963, writ ref'd). Texas courts therefore

---

[5] Under FAA § 3, when a party moves to stay litigation pending arbitration, the court shall grant the motion "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. Section 4 requires a court to grant a motion to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id*. § 4.

do not ordinarily inquire into the reasons for the contract or the relative fairness of its terms.  *El Paso Field Services, L.P. v. MasTec N. Am., Inc.,* 389 S.W.3d 802, 810-11 (Tex. 2012) (observing that a court's role "is not to protect parties from their own agreements").  But this notion that parties are free to negotiate their own bargains conflicts with the equally compelling notion that grossly unfair bargains should not be enforced.  49 DAVID R. DOW & CRAIG SMYSER, TEXAS PRACTICE SERIES: CONTRACT LAW § 3.9 (2005).  Unconscionable bargains are therefore an exception to the freedom that generally pervades contract law.

Unconscionability, however, is not easily defined.  The term defies a precise legal definition because "it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula."  27 STEPHEN COCHRAN, TEXAS PRACTICE SERIES: CONSUMER RIGHTS AND REMEDIES § 4.2 at 394 (3d ed. 2002); *see also* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 4-3 at 294 (5th ed. 2006).  Although difficult to define, the defense has a long history.  One of the earliest decisions to apply the defense described an unconscionable contract as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100, 2 Ves. Sr. 125, 155 (1751); *see also Saunders v. Guinn*, 1 S.W.2d 363, 366  (Tex. Civ. App.–Eastland 1927, writ ref'd) (noting this "definition"); *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 896 (Tex. 1991) (Mauzy, J. concurring and quoting *Janssen*).  Modern uniform laws add context to the defense but again do not attempt to define it.

The Uniform Commercial Code provides that a court should afford the parties a reasonable opportunity to present evidence as to a contract's commercial setting, purpose and effect to aid the

8

court in evaluating the defense. TEX. BUS. & COMM. CODE § 2.302(b); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (stating that unconscionability determinations are made in "light of [a contract's] setting, purpose, and effect"). Under the UCC, an unconscionability defense is a question of law that involves a highly fact-specific inquiry into the circumstances of the bargain, such as the commercial atmosphere in which the agreement was made, the alternatives available to the parties at the time and their ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature. 49 TEXAS PRACTICE SERIES: CONTRACT LAW § 3.11.

In the court of appeals, the cotton farmers argued that the arbitration agreement was unconscionable in several respects. They complained that the American Cotton Shippers Association (ACSA) Arbitration Rules, adopted by the agreement, were one-sided and designed to foster arbitrator bias and that the rules' summary procedures further denied them adequate discovery and preparation time. They also contended that the arbitration was too expensive and that its prospective cost would prevent them from vindicating their rights in the arbitral forum. Finally, they argued that the agreement and ACSA rules violated the state's public policy by illegally eliminating their statutory right to attorney's fees and other remedies under the Texas Consumer Protection—Deceptive Trade Practices Act (DTPA).

## B. Invalidity

The court of appeals' decision focuses solely on this last argument, concluding that the arbitration agreement is unconscionable because it forces the farmers "to forego substantive rights and remedies afforded by statute." 395 S.W.3d at 275. The court's application of public policy here is premised on our decision in *In re Poly-America, L.P.*, 262 S.W.3d 337 (Tex. 2008). There, we

9

indicated that it would be unconscionable for an arbitration agreement to mandate arbitration of a statutory claim and at the same time eliminate the rights and remedies afforded by the statute. *Id.* at 349. The court of appeals concludes that such a possibility exists here because the arbitration agreement applies to "all disputes," while the ACSA Arbitration Rules, incorporated into the parties' agreement, foreclose the farmers' statutory claims for attorney's fees and enhanced damages under the DTPA. Specifically, section 8(k) of the ACSA rules limits the arbitral award "to the monetary damages arising out of the failure of either party to perform its obligations pursuant to the contract as determined by the Arbitration Committee and shall not include attorney's fees unless provided for in the contract."

When parties agree to arbitrate a statutory claim, "a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Thus, in *Poly-America*, we observed that arbitration agreements typically function simply as forum-selection clauses rather than statutory waivers and generalized that "[a]n arbitration agreement covering statutory claims is valid so long as 'the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.'" *Poly-America*, 262 S.W.3d at 352 (quoting *In re Halliburton*, 80 S.W.3d at 572).

An asserted waiver of the anti-retaliation provisions of the Workers' Compensation Act was at issue in *Poly-America*. The employee in that case sued his employer, seeking statutory remedies of reinstatement and punitive damages after being allegedly terminated for filing a workers'

10

compensation claim. *Id*. at 345. Because the employee had agreed to arbitrate all disputes under the FAA, the trial court granted the employer's motion to compel arbitration. *Id.* at 344.

The employee sought mandamus relief from this order, arguing that the arbitration agreement was unconscionable because it eliminated his rights and remedies under the Workers Compensation Act. *Id*. at 352, 359. We agreed. *Id*. at 353, 360. After reviewing the statutory remedies at issue, we held the anti-retaliation provisions to be "a non-waivable legislative system" necessary to the Act's function. *Id*. at 352. We further concluded that their elimination under the arbitration agreement undermined a key purpose of the Workers' Compensation Act, was contrary to public policy, and could not be enforced. *Id*. at 353. We did not, however, hold the arbitration agreement invalid. Instead, we severed the offending limitation from the agreement and permitted the arbitration to proceed. *See id.* at 344 (noting that severance was proper because the limitation of statutory remedies was "not integral to the parties' overall intended purpose to arbitrate").

In contrast to *Poly-America*'s anti-retaliation provision, the DTPA remedies at issue here can be contractually waived. TEX. BUS. & COM. CODE § 17.42. The DTPA provides detailed instructions on how to accomplish this. *See id.* (detailing requirements for a valid waiver). Among other requirements, the waiver must be "conspicuous and in bold-face type of at least 10 points in size," identified by a specific heading indicating the waiver, and include language substantially similar to the form the statute provides. *Id*. § 17.42(c)(1), (2) and (3). The contracts here do not comply with the statutory requirements. We accordingly agree with the court of appeals that any implied waiver under ACSA Rule 8(k), which likewise does not conform to the DTPA's requirements, is contrary to public policy and therefore invalid.

11

**C. Severability**

Venture argues, however, that even if ACSA Rule 8(k) and the arbitration clause are deemed unconscionable and incapable of limiting the farmers' statutory rights under the DTPA, the court of appeals nevertheless erred when it refused to sever the offending rule and require arbitration under the remainder of the agreement. Venture submits that the unconscionability defense, which is codified in the Texas Business and Commerce Code and applicable to the cotton sales at issue here, allows courts to consider severance whenever they are confronted with an unconscionable contract term. TEX. BUS. & COM. CODE § 2.302. Similarly, the Restatement provides that "[w]here a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term." RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. g.

The court of appeals concludes, however, that Venture waived its right to enforce the remainder of the arbitration clause by not asking the trial court to sever the offending limitation of statutory remedies. 395 S.W.3d at 277. But this is an interlocutory appeal, and the case remains pending in the trial court. We are therefore unsure about what Venture has waived. If the court merely means to suggest that Venture waived the right to complain about severance in this interlocutory appeal, the waiver argument serves only to delay a decision in the case. Conservation of time and resources recommend that we consider the issue now because nothing prevents Venture from urging severance in the trial court and, if denied, from renewing its complaint in yet another interlocutory appeal.

In *Poly-America* we noted that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Poly-*

12

*America*, 262 S.W.3d at 360. In determining an agreement's essential purpose, the issue is "whether or not parties would have entered into the agreement absent the unenforceable provisions." *Id*. Quite clearly, the arbitration agreement's essential purpose here was to provide for a speedy and efficient resolution of disputes to ensure timely performance under the contract. The agreement's collateral effect on statutory rights and remedies appears to be a peripheral concern to this essential purpose. We accordingly conclude that the court of appeals erred in declining to sever the objectionable limitation on the farmers' statutory rights.

### D. Attorney's Fees

In addition to the agreement's unconscionable limitation on potential statutory rights, the court of appeals concludes that the arbitration agreement is also unconscionably one-sided because it provides for only Venture to recover attorney's fees. 395 S.W.3d at 276. The court's opinion further indicates that this provision together with an ACSA rule, limiting the award of attorney's fees to those expressed in the contract, violates the farmers' statutory right to attorney's fees under Civil Practice and Remedies Code section 38.001.

That section provides, in relevant part, that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE 38.001. The court of appeals ultimately decides, however, that the arbitration agreement fails effectively to waive the farmers' rights under section 38.001 because the agreement and ACSA rules do not reference the statute or otherwise specifically inform the farmers of the intended waiver of such rights. *See* 395

13

S.W.3d at 276 (concluding that waiver of these statutory rights cannot occur absent specific notice and reference to § 38.001).

Venture, on the other hand, argues that whether the agreement waives these rights is irrelevant because the statute simply does not apply to the farmers' circumstances. The statute does not apply, according to Venture, because the farmers seek to cancel the contract rather than recover under its terms. In short, Venture contends that the farmers' pleadings do not assert contractual rights and therefore do no invoke a right to attorney's fees under section 38.001.

The farmers respond that they have pled a breach of contact claim. Their pleadings are not clear on the subject, but even were we to recognize some deficiency in the present pleadings, the result would be merely to postpone the issue, much the same as the court of appeals has done with the severance question. The appeal is interlocutory, and the farmers are free to amend their pleadings to clarify the matter. For purposes of this appeal then, we accept that the farmers intended to plead an alternative breach of contract claim, as they assert. We conclude, however, that neither the contract's attorney's fee provision nor its effect on attorney's fees under section 38.001 is sufficient to invalidate the arbitration agreement as unconscionable.

Parties are generally free to contract for attorney's fees as they see fit. *Intercontinental Group P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 653 (Tex. 2009). Thus, a contract that expressly provides for one party's attorney's fees, but not another's, is not unconscionable per se. Although perhaps relevant to a broader inquiry into contractual oppression or an imbalance in bargaining power, the attorney's fee provision here is not, standing alone, decisive proof of an unconscionable bargain. Moreover, the court of appeals itself concludes that the arbitration

14

agreement did not waive the farmers' statutory right to attorney's fees under section 38.001 and so its relevancy to the court's unconscionability analysis is unclear.

In *Olshan*, we observed that the "crucial inquiry" in determining unconscionability was "whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 894 (Tex. 2010). That inquiry is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy. *Id*. at 896. If speculation about possible harm was insufficient to establish unconscionability in *Olshan*, then clearly the court's determination here that no harm has been done will not suffice. *See* 395 S.W.3d at 276 (concluding that arbitration agreement did not waive cotton farmers' right to attorney's fees under section 38.001).

In *Olshan*, we cautioned that courts "should be wary of setting the bar for holding arbitration clauses unconscionable too low" as that would undermine the "liberal federal policy favoring arbitration agreements." *Olshan*, 328 S.W.3d at 893. Courts should also use care not to intrude upon arbitral jurisdiction under the guise of an unconscionability defense.

Questions of waiver, illegality, remedies, and attorney's fees often relate to the broader, container contract, rather than the separable agreement to arbitrate, and, as such, are matters entrusted to the arbitrators.[6] And, when authority over the matter is unclear, "a strong federal

---

[6] Professor Rau explains:

Suppose that the issue–"whether the plaintiff can recover statutory damages or attorneys' fees"–*is treated as one more claim or dispute within the scope of the arbitration clause*; suppose further that in pursuing this inquiry the decisionmaker is presented with some more precise questions:
 . For openers, is the contractual limitation of remedies properly interpreted as a "waiver" by the

15

presumption" favors arbitration. *Poly-America*, 262 S.W.3d at 348. Thus, the United States Supreme Court has indicated that arbitration provisions should not be held unconscionable based on speculation about their potential effect. *See PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 407 n.2 (2003) (noting that "the preliminary question [of] whether the remedial limitations at issue . . . prohibit[ed] an award of RICO treble damages [was] not a question of arbitrability").

In *PacifiCare*, several physicians filed suit against managed healthcare organizations, including PacifiCare and UnitedHealth, alleging breach of contract, unjust enrichment, and violations of several federal and state statutes, including RICO. *Id.* at 402. Because the arbitration agreements prohibited awarding punitive damages, the physicians argued that arbitration would prevent them from obtaining "meaningful relief" under RICO's treble-damages provision. *Id.* at 403. The lower courts agreed, holding the arbitration clauses to be unenforceable with respect to the RICO claims. *Id.*

---

plaintiff of the recovery otherwise made available by statute?
  . If so, is the plaintiff able to waive this recovery? More precisely: Are, say, "sophisticated groups of doctors" who contract with a managed care company the sort of plaintiffs who in these circumstances need the protection of an unwaivable rule? For commercial parties in high-stakes cases, the appropriate trade-off between litigation and informal justice may sometimes take the form of choosing a more intensive form of judicial review; an alternative bargain might call for reducing the risk of excessive damage awards.
  . And in any event, is it sensible to address either of these concerns in the form of an interim decision preceding the merits? Might they not instead be the focus of attention at a later point–once the predicate of liability has been established, and an appropriate remedy needs to be crafted?
        Framed in this way, all these questions begin very much to look as if they belonged *to the realms of interpretation and appreciation of context*–that is, to the matters of substance that have been routinely entrusted to arbitrators.

Alan Scott Rau, *Everything You Really Need to Know About "Separability" in Seventeen Simple Propositions*, 14 AM. REV. INT'L ARB. 1, 65-66 (2003) (emphasis in original) (footnotes omitted).

The Supreme Court reversed and remanded, concluding that it was "premature" to conclude that the contractual ban on punitive damages acted as a bar to statutory damages and that the arbitrator should decide the issue as an initial matter. *Id*. at 404. The Court thus deferred consideration of whether public policy might taint the arbitration agreement's enforceability until the award-enforcement stage, but implicit in the Court's analysis was the notion that the arbitration clause was prima facie enforceable, notwithstanding the contractual prohibition on punitive damages.

In summary, we conclude that a contract that fails to provide reciprocal rights to attorney's fees is not unconscionable per se. We further disagree with the court of appeals' opinion to the extent it uses the contract's "one-sided" attorney's fees provision as an independent reason to hold the arbitration agreement unconscionable. *See* 395 S.W.3d at 276.

### III. Unaddressed Arguments

Although the court of appeals' refusal to compel arbitration in this case rests solely on public-policy grounds, unconscionability typically involves a broader inquiry, and, indeed, the farmers presented a broader case in the trial court. In addition to their complaint about the agreement's limitation of remedies, the farmers contended they could not effectively vindicate their rights through arbitration because of arbitrator bias, the lack of adequate discovery under the arbitration's summary procedures, the exorbitant cost of the arbitration itself, and other inequities in the arbitral process. The court of appeals did not consider these additional concerns once it determined the arbitration agreement to be "substantively unconscionable" because it prevented the farmers from pursuing statutory remedies. *See* 395 S.W.3d at 277 (concluding that the court did not

17

need to consider "remaining arguments attacking appellees' other substantive unconscionability and procedural unconscionability defenses").

Texas courts usually analyze unconscionability issues "in light of a variety of factors, which aim to prevent oppression and unfair surprise . . ." *Poly-America,* 262 S.W.3d at 348. Unconscionability determinations are not isolated inquiries but rather are made in "light of [a contract's] setting, purpose, and effect." RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a. Thus, in *Olshan* we observed that a court should consider "the parties' general commercial background and the commercial needs of the particular trade or case" when determining whether "the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Olshan*, 328 S.W.3d at 892 (quoting *FirstMerit Bank*, 52 S.W.3d at 757).

In the court of appeals, Venture has argued the commercial reasonableness and necessity for the arbitration agreement, while the farmers have emphasized potential abuses and unequal treatment under the arbitral process. In this Court, the parties have not briefed or argued these broader concerns. They have instead focused solely on the court of appeals' rationale for affirming the trial court's order. Because the court's public-policy analysis is insufficient to defeat arbitration, the arguments left unaddressed in the court of appeals should be considered as they are "necessary to the final disposition of the appeal." TEX. R. APP. P. 47.1.

* * *

The court of appeals' judgment, affirming the trial court's order denying arbitration, is reversed, and the case is remanded to the court of appeals for consideration of the remaining arguments.

_____

John P. Devine
Justice

Opinion Delivered: June 13, 2014