

# NUMBER 13-23-00291-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

POWER EXPLORATION, L.L.C.,                                    Appellant,

v.

SUN EXPLORATION, INC.,                                    Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW
## OF JIM WELLS COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Power Exploration, L.L.C. (Power) brings an interlocutory appeal from an order denying its motion to compel arbitration of disputes with appellee Sun Exploration, Inc. (Sun). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1). We affirm.

# I. BACKGROUND[1]

Sun is the current operator of certain oil and gas leases. On October 25, 2000, Power entered into a Joint Operating Agreement (JOA) with Mortimer Exploration Company, Sun's predecessor-in-interest. The JOA contains an arbitration clause which provides as follows: "ANY CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY BREACH THEREOF SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATION MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF." (Emphasis in original.)

Sun acquired the rights in the leases in November of 2016, and began providing goods and services for the interest owners of the leases. On June 27, 2019, Sun filed suit against Power alleging that Power had refused to pay operating expenses and arguing the following theories of recovery: suit on sworn account, breach of contract, and quantum meruit. Sun attached to its petition numerous invoices for lease operating expenses that it alleges had gone unpaid by Power, totaling $61,416.69. A little over a month before a trial setting of May 22, 2023, Power filed a motion to compel arbitration on April 20, 2023. Sun filed a response and asserted the affirmative defense of implied waiver. After a hearing on Power's motion to compel arbitration, the trial court denied the motion. This

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Fourth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

accelerated appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). "A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (citation omitted). "Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643 (citations omitted). "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Henry*, 551 S.W.3d at 115 (first citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643; and then citing *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008)).

The trial court did not issue findings of fact or conclusions of law to explain its denial of the motion to compel arbitration. We must, therefore, uphold the trial court's decision on any appropriate legal theory urged below. *See Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.). Because the trial court would err if it denied a motion to compel arbitration on a ground not raised by the resisting party, we may affirm the trial court's refusal to compel arbitration only if one of the grounds presented by the resisting party is valid. *See APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.).

3

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. *See Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver. See *id.* To establish an implied waiver, the non-movant has the burden to demonstrate that the movant (1) substantially invoked the judicial process in a manner inconsistent with his claimed right to compel arbitration, and (2) suffered actual prejudice as a result of this inconsistent conduct. *See Henry*, 551 S.W.3d at 116. "Due to the strong presumption against waiver of arbitration, this hurdle is a high one." *Perry Homes*, 258 S.W.3d at 590.

To determine whether a party has substantially invoked the judicial process, we look to the totality of the circumstances and consider a wide variety of factors, including:

> how long the party moving to compel arbitration waited to do so; the reasons for the movant's delay; whether and when the movant knew of the arbitration agreement during the period of delay; how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits; whether the movant requested the court to dispose of claims on the merits; whether the movant asserted affirmative claims for relief in court; the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction); the amount of time and expense the parties have committed to the litigation; whether the discovery conducted would be unavailable or useful in arbitration; whether activity in court would be duplicated in arbitration; and when the case was to be tried.

*G.T. Leach Builders, LLC*, 458 S.W.3d at 512 (cleaned up) (citing *Perry Homes*, 258 S.W.3d at 590–91); *see Ellman v. JC Gen. Contractors*, 419 S.W.3d 516, 520 (Tex. App.—El Paso 2013, no pet.) (describing these as the "*Perry Homes* factors").

4

To establish waiver, the party opposing arbitration must also show that it has been prejudiced by the moving party's delay in moving to compel arbitration. *See Perry Homes*, 258 S.W.3d at 595. In this context, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." *Id*. at 597 (citation omitted). Such unfairness results when a party attempts "to have it both ways by switching between litigation and arbitration to its own advantage[.]" *Id*.

### III.  DISCUSSION

The parties do not dispute the validity and existence of an arbitration clause in the JOA or that the issues disputed are within the scope of the agreement. *See Venture Cotton Coop.*, 435 S.W.3d at 227. Accordingly, the only issue before us is whether Sun successfully established its implied waiver defense. *See Henry*, 551 S.W.3d at 116.[2]

### A.  Substantial Invocation of Judicial Process

Sun filed a response to Power's motion to compel arbitration in the trial court in which it specifically argued that "[a]t every step of litigation, for almost 4 years, Power took every opportunity to engage in litigation leading everyone to believe the case would go to trial." Sun further noted that "[d]uring the 46 month delay" before filing its motion to compel arbitration, "Power: 1) agreed to a jury trial; 2) responded to multiple requests for written discovery; 3) sent multiple written discovery requests; 4) demanded compliance

---

[2] Power questions whether the doctrine of implied waiver still exists in light of the Texas Supreme Court's decision in *Bonsmara Natural Beef Co., LLC v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385 (Tex. 2020) (concluding that a party's choice not to file an interlocutory appeal of order denying motion to compel arbitration does not later deprive an appellate court of jurisdiction). This argument is without merit. Waiver was not at issue in *Bonsmara*, and the *Bonsmara* Court explicitly noted that "[t]he doctrine of waiver by litigation conduct neither impacts the jurisdiction of our courts of appeals nor illuminates what the words of the interlocutory appeal statute mean." *Id*. at 395–96.

with discovery requests; and 5) filed affirmative counter-claims." *See APC Home Health Servs., Inc.*, 600 S.W.3d at 389.

Power claims that it did not file its motion to compel arbitration until April of 2023 because it was not aware of the contents of the JOA, including the arbitration clause, until that time. Specifically, Power argues that it first became aware of the contents of the JOA when Sun filed a motion for summary judgment as to certain of Power's counterclaims on April 17, 2023, to which a copy of the JOA was attached as an exhibit. However, Power does not dispute that it was a signatory to the JOA when it was executed in October of 2000, and we can thus presume that Power was aware of the arbitration provision. *See Fid. Auto Group, LLC v. Hargroder*, 689 S.W.3d 1, 15 (Tex. App.—Beaumont 2024, no pet.) ("[W]e presume a party who can read a contract containing an arbitration agreement and signs it, knows its contents." (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)).

Even setting this aside, the record shows that Power became aware of the JOA well before filing its motion to compel arbitration. In particular, on January 16, 2020, more than three years before the filing of the motion to compel arbitration, counsel for Power sent an email to opposing counsel arguing that Sun "is in *violation* of the Operating Agreement and in light of this *violation* it seems likely that the Leases have terminated." (Emphasis in original.) On July 17, 2020, Power also filed responses to one of Sun's production requests which made explicit reference to the JOA. In response to a request to identify "[a]ll contracts or agreements entered into between [Power] and [Sun] pertaining to the Claims asserted in this litigation," Power answered "Mortimer Exploration Company Operating Agreement." In response to a request to identify "[a]ll documents and

tangible things that discuss, relate to, or refer to each and every fact, reason, allegation, or theory under which you deny that you are liable to Plaintiff for the Claims that are the subject of this litigation," Power answered, in part, "Operating Agreement."

Contrary to Power's arguments, its own representations show that it was provided a copy of the JOA in response to its discovery requests on, at the latest, January 16, 2020, more than three years and three months before it filed its motion to compel arbitration.[3] Power did not file its motion to compel arbitration until close to a month before trial. *See Perry*, 258 S.W.3d at 596 (providing that we compare the months between initiating lawsuit and motion to compel arbitration with months remaining before trial date when determining whether a party substantially invoked the judicial process). Power's extensive and unexcused delay in filing its motion to compel arbitration on the eve of trial favors waiver. *See Fid. Auto Group, LLC*, 689 S.W.3d at 15 (finding waiver where a party "waited four years [to file a motion to compel arbitration] and failed to explain this delay other than new counsel noticed there was an arbitration agreement," and where the motion was filed three months before trial); *Ellman*, 419 S.W.3d at 520 (finding waiver and noting that "[p]erhaps the most striking of [the *Perry Homes*] factors is that Appellants waited almost three years after the suit was filed and two and a half months before the trial date to demand arbitration"); *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 24 (Tex. App.—El Paso 2020, pet. denied) (finding waiver where party filed motion to compel arbitration more than a year and a half after suit was filed and a little over a month before the trial setting).

---

[3] Also, on November 29, 2022, close to five months before Power filed its motion to compel arbitration, Sun filed an amended first petition in which it explicitly claimed that it was entitled to relief under the JOA.

7

Further, from the beginning of the case, Power's pretrial litigation activity consistently related to the merits rather than arbitrability or jurisdiction. *See G.T. Leach Builders, LLC*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–91. In its initial disclosures to Sun, in addition to arguing that venue was improper,[4] Power: "denie[d] that it is in default on an account to [Sun]"; "denie[d] that it owes [Sun] $61,416.68"; "denie[d] that all just and lawful offsets, payments and credits have been allowed on the account as asserted by [Sun]"; asserted that the running balance on the account alleged by Sun is erroneous; and "denie[d] that all conditions precedent to the recovery have occurred and/or been waived or performed." In its response to Sun's production requests dated July 17, 2020, Power explicitly referred to the JOA and continued to represent that it was claiming a defense on the merits. For example, Power complained that Sun had not provided billing statements or invoices for over a year. Further, although Power acknowledged that it had received services from Sun, it argued that the "[p]rice is disputed." In essence, Power argued that Sun was overstating its operating costs, and could not substantiate the costs assessed against Power. *See Day Cruises Mar., L.L.C v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 53 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied) (citations omitted) (defining the elements of a suit on sworn account to include "that the amount of the account is just, that is, that the prices were charged in accordance with an agreement or were customary and reasonable prices").

---

[4] We do not consider Power's motion to transfer venue as part of our waiver analysis. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 513 (Tex. 2015) ("We have rejected arguments relying on venue challenges to establish waiver because such challenges do not relate to the merits of the case."). We do note, however, that the motion to transfer venue was denied on October 17, 2019, before Power mentioned the JOA in correspondence with Sun and in response to production requests, as described above.

Power's actions shortly before filing its motion to compel arbitration also favor waiver. In a letter dated April 11, 2023, counsel for Power requested to take a deposition of a representative for Sun and stated that it would like to "explore" the following matters:

a. invoices at issue in this matter; b. relationship of the parties; c. prior dealings/course of dealings between the parties; d. correspondence and communication between the parties; e. any claim or defense of Sun Exploration, Inc.; f. discovery responses and document production; g. facts, issues and circumstances concerning the accounts at issue; h. any reason for non-payment of the invoices subject of this suit; i. any agreement between the parties; and , j. pleadings of [Sun].

On April 14, 2023, just days before filing its motion to compel arbitration, Power filed a motion to transfer venue "and in the alternative first amended original answer and counterclaim." In this pleading, Power asserted affirmative defenses based on the provisions of the JOA. For example, it claimed that: "Sun has not sent any invoices to Power in the past four (4) or five (5) years . . . [as] required by the Operating Agreement," and that this "failure excuses payment, if any"; "the chart attached to the Second Amended Petition is unreliable and lacks any supporting data which is required by the [JOA]"; and "Sun is required pursuant to [the JOA] to show Power the monthly income," "[t]his has not been done and amounts to a breach of a fiduciary duty . . . [and] excuses payment, if any." Based on these allegations, Power asserted claims of breach of contract and breach of fiduciary duty against Sun and asserted that it was entitled to damages. These actions favor waiver. *See Ellman*, 419 S.W.3d at 520 ("An examination of the *Perry Homes* factors demonstrates that Appellants substantially invoked the judicial process. Appellants are the defendants in the trial court, but they have also raised affirmative claims for relief by virtue of their counterclaim.").

9

We agree with Power that delay alone is not enough to find that a party substantially invoked the judicial process. *See Fid. Auto Group, LLC*, 689 S.W.3d at 16 (noting that "discovery *alone* and delay *alone* are not enough to find that [a party] substantially invoked the litigation process" (emphasis in original)). However, here the totality of the circumstances favor waiver. In particular: (1) Power was a signatory to the JOA and is presumed to have known of the existence of the arbitration clause; (2) Power referred to the JOA in communications with Sun as early as January 16, 2020, three years and three months before filing its motion to compel arbitration; (3) Power filed its motion to compel only 32 days before the trial setting; (4) Power failed to provide an adequate excuse for its delay; (5) Sun's suit was based on Texas Rule of Civil Procedure 185, a rule designed to limit the evidence necessary to sustain Sun's claim; (6) Power's pleadings and correspondence with Sun indicate that it was attacking the merits of Sun's claims by disputing the price of the services provided; and (7) Power filed counter-claims against Sun based on the terms of the JOA. *See Fid. Auto Group, LLC*, 689 S.W.3d at 16 ("It is the combined force of 1) Baytown Nissan's unexplained delay of four years, 2) the length of that delay compared with the months to the trial date, 3) the presumption that it knew its contract forms contained an arbitration provision and was aware of the provision from the outset, 4) that it propounded multiple sets of merits-based discovery, 5) that it deposed key witnesses, and 6) that it only sought to compel arbitration after the trial court adversely ruled against it on a Motion to Compel and required it to produce documents significant to Hargroder's claims that points us to our decision.").

Accordingly, based on the totality of the circumstances, and in consideration of the relevant *Perry Homes* factors, we conclude that Power substantially invoked the judicial

process in a manner inconsistent with the right to arbitration. *See Perry Homes*, 258 S.W.3d at 596; *Fid. Auto Group, LLC*, 689 S.W.3d at 16.

## B.     Prejudice

Having found that Power substantially invoked the judicial process, we next turn to whether Sun showed that it suffered prejudice as a result. *See Perry Homes*, 258 S.W.3d at 597. "A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims." *Ellman*, 419 S.W.3d at 522 (citing *Perry Homes*, 258 S.W.3d at 600). "In contrast, where a party fails to demand arbitration and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised or prejudiced." *Id*. (citing *Perry Homes*, 258 S.W.3d at 600). Power's argument against prejudice is limited to the following: "Sun filed this [case] over four years ago without taking so much as [a] single deposition. Sun did not set the case for trial until October 27, 2022. . . . This was the case['s] first and only [trial] setting. . . . Sun cannot now come in and say it will suffer prejudice by going to arbitration which it agreed to do in writing."[5]

Power's position "confuses proof of the *fact* of prejudice with proof of its *extent*; [a party must] show substantial invocation that prejudiced them, not precisely how much it

---

[5] Power also suggests that Sun cannot satisfy its burden of showing waiver because it failed to call any witnesses. However, Power cites no authority in support of this argument. To the extent that Power argues that Sun was required to present witnesses to satisfy its burden of showing waiver, such argument is inadequately briefed and therefore waived. *See* TEX. R. CIV. P. 38.1(i) (stating an appellant's brief must contain appropriate citations to authorities); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing the "long-standing rule" that a point may be waived due to inadequate briefing).

all was." *Perry Homes*, 258 S.W.3d at 599 (emphasis in original). In determining prejudice, "[t]he amount of discovery needed to show prejudice will vary depending on what the other circumstances are." *Id*. at 600; *see* TEX. R. CIV. P. 185 (limiting evidence necessary to establish a prima facie right to recovery on certain types of accounts); *see also Perry Homes*, 258 S.W.3d at 593 (referring to evidentiary limits imposed by the Texas Rules of Civil Procedure when stating that "three or four depositions may be all the discovery needed in one case" (citing TEX. R. CIV. P. 190.2(c)(2) (limiting parties in Level 1 cases to six hours of depositions))). Further, a party need not provide specific evidence of discovery costs or attorneys' fees to show prejudice. *See Ellman*, 419 S.W.3d at 522 ("A party opposing arbitration is not always required to prove the cost of the extensive discovery in order to prove prejudice." (citation omitted)); *Fid. Auto Group, LLC*, 689 S.W.3d at 17 ("Thus, even without specific evidence of discovery costs or attorneys' fees, a party may demonstrate prejudice on the face of the record." (cleaned up)).

Here, the most substantial factor supporting prejudice is the extraordinary delay caused by the late request for arbitration. *See Truly Nolen of Am., Inc.*, 597 S.W.3d at 25 ("The most substantial factor in our analysis here is the extraordinary delay Martinez suffered by the late request for arbitration. As earlier mentioned, Truly Nolen filed its request over a year and a half after Martinez filed his lawsuit, four days before the discovery period ended, and a little over a month before trial was set to begin."). Power waited more than three years and nine months after the lawsuit was initiated to file its motion to compel arbitration pursuant to the JOA to which it was a signatory and close to a month before the trial setting.

We note, in particular, that Power provides no justifiable excuse for its delay,

12

instead claiming that it became aware of the contents of the JOA only weeks before filing its motion to compel when Sun attached a copy of the JOA as an exhibit to one of its pleadings; a claim negated by the fact that Power was referring to the JOA in its correspondence with Sun and its discovery responses years before it filed its motion to compel, as early as January of 2020. *See Perry Homes*, 258 S.W.3d at 597 ("A party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." (cleaned up)). In light of the nature of Sun's claim, *see Perry Homes*, 258 S.W.3d at 593, Power's substantial and unjustifiable delay in filing its motion to compel arbitration damaged Sun's legal position. *See Fid. Auto Group, LLC*, 689 S.W.3d at 17 (noting that where a party purposefully and unjustifiably manipulates the exercise of its arbitral rights "the party opposing arbitration suffers harm to its legal position"); *Truly Nolen of Am.*, 597 S.W.3d at 25 ("[T]here is at least some minimal showing of damage to Martinez's legal position where he responded to discovery on the merits and produced pretrial disclosures to include lists of trial witnesses and exhibits.").

On this record, based on the totality of the circumstances, we cannot say that the trial court abused its discretion in concluding that Power waived its right to arbitrate by substantially invoking the judicial process to Sun's detriment. The trial court could have reasonably concluded that Power's "attempt to have it both ways by switching between litigation and arbitration to its own advantage" resulted in "inherent unfairness" to Sun. *Perry Homes*, 258 S.W.3d at 597; *see Truly Nolen of Am.*, 597 S.W.3d at 25 ("Based on the extreme delay, undeniable expense, and at least a minimal showing of damage to his legal position, we hold that Martinez has also proved the necessary showing of prejudice

13

here."); *Fid. Auto Group, LLC*, 689 S.W.3d at 18 (concluding that "the trial court could have concluded that Hargroder had been prejudiced by Baytown Nissan's attempt to manipulate the litigation process to its advantage by demanding arbitration after an unexcused four-year delay, [and] three months before a scheduled trial setting," among other factors). We overrule Power's sole issue.

## V.    CONCLUSION

Having overruled Power's sole issue, we affirm the trial court's judgment denying Power's motion to compel arbitration.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
1st day of August, 2024.