Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-10-00688-CV

Albert **GARCIA**,
Appellant

v.

Edward **HUERTA** and Margarita A. Huerta, Individually and as Next Friends of
Heather L. Huerta, Edward Timothy Huerta and Danara L. Huerta,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-08-01
Honorable Alex William Gabert, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  March 30, 2011

REVERSED and REMANDED

Albert Garcia challenges the trial court's rendition of an amended order denying him

arbitration.  We reverse the judgment of the trial court, and remand the cause to the trial court for

further proceedings.

### BACKGROUND

The facts underlying this case are summarized in this court's earlier opinion in *In re*

*Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 821-23 (Tex. App.—San Antonio 2009, orig.

proceeding), as follows.  The underlying dispute involves allegations that Wells Fargo Bank, N.A., America's Servicing Company, Premiere Asset Services, Langley & Banack, Inc., Robert Carl Jones (an attorney employed by the law firm of Langley & Banack), and Albert Garcia wrongfully foreclosed on Edward and Margarita Huerta's ("the Huertas") property.  The Huertas obtained a home equity loan from Wells Fargo.  In connection with this loan, the Huertas and Wells Fargo entered into an arbitration agreement.  The arbitration agreement provided that:

> Any party to this Agreement or to any Loan Document may require that any Dispute be resolved by binding arbitration in accordance with the terms of this Arbitration Program, administered by the American Arbitration Association (the "AAA") . . . and the Federal Arbitration Act . . . .

> A 'Dispute' shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Note or Loan Documents or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents, or injuries of any kind whatsoever relating to or involving consumer lending, business banking, community banking, Private Client Services, or any successor group or department of Lender . . . .  Arbitration may be demanded at any time, and may be compelled by summary proceedings in Court.

Subsequently, the Huertas defaulted on the home equity loan; they eventually filed for bankruptcy and the loan was discharged.

Thereafter, Wells Fargo, through its counsel Langley & Banack, sought a non-judicial foreclosure of the home equity loan.  The property was purchased by Wells Fargo at the foreclosure sale.  Wells Fargo and its wholly-owned subsidiary, Premier Asset Services, then hired Garcia, a real estate agent, to evict the Huertas and to remove their belongings from their home.  Premiere asked Garcia to use his best efforts to sell the property, and specifically directed him to clean up and repair the property.  Following the eviction, the Huertas filed suit against Wells Fargo, America's Servicing Company, Langley & Banack, Jones, Premiere, and Garcia.

As to Garcia, the Huertas asserted claims under the Texas Debt Collection Act and alleged that he committed trespass, theft, burglary and conversion, and invasion of privacy.

Thereafter, all defendants, including Garcia, moved to compel arbitration. In response to the motions to compel arbitration, the Huertas asserted there was not a valid and binding arbitration agreement because, among other reasons, the agreement was only between "Wells Fargo Bank Texas, N.A." and the Huertas, not any of the actual parties to the lawsuit. The trial court denied all of the motions to compel arbitration.

Wells Fargo, America's Servicing Company, Premiere, Langley & Banack, Jones, and Garcia then filed a petition for writ of mandamus in this court, seeking to compel the trial court to vacate the order denying their motions to compel arbitration. We held that Wells Fargo had the right to enforce the arbitration agreement.[1] *Id*. at 824. We further held that although the remaining defendants, including Garcia, were nonsignatories to the arbitration agreement, they acted as agents of Wells Fargo and their allegedly wrongful acts related to their behavior as agents of Wells Fargo; therefore, they were also entitled to enforce the arbitration agreement. *Id*. at 825. Finally, we held that none of the defendants had waived their right to compel arbitration based on invocation of the judicial process. *Id*. at 830-31. We conditionally granted mandamus and directed the trial court to withdraw its order denying the defendants' motions to compel arbitration. *Id*. at 832. The trial court complied, and signed an "Amended Order on Motion to Compel Arbitration" which granted the defendants' motions to compel arbitration and stayed the district court litigation pending the outcome of the arbitration proceedings.

Thereafter, the Huertas negotiated a settlement with Wells Fargo and the remaining defendants, except for Garcia. The Settlement Agreement provides for the assignment of Wells

---

[1] We specifically held that Wells Fargo Bank, N.A. established that Wells Fargo Bank Texas, N.A. was consolidated and resulted in Wells Fargo Bank, N.A., which had the right to enforce the arbitration agreement. *Id*. at 824.

Fargo's claims against Garcia to the Huertas and contains a provision requiring the settling defendants to execute (1) an assignment of their claims against Garcia to the Huertas and (2) a waiver of the defendants' rights to enforce the arbitration agreement with respect to any claim against Garcia:

> **17. Cooperation**. The Parties agree to cooperate with one another to execute and file or deliver such other documentation as may be necessary or appropriate to accomplish the intent and purpose of this Agreement, including papers: (1) to assign any and all claims that Wells Fargo and/or its Affiliates might have against Albert Garcia, First Texas Realty, Blue Star Services and/or their Affiliates related to or arising from the events made the basis of this Lawsuit; (2) to waive any rights to enforce any arbitration agreement as it may relate to any claims asserted against Garcia, First Texas Realty, and Blue Star Services, as agents for Wells Fargo, whether brought as a result of assignment from Wells Fargo or brought independently from such assignment; . . . (4) to vacate the order compelling arbitration; . . .

A month after the Settlement Agreement was executed, the Huertas filed their "Motion to Amend the Amended Order on Motions to Compel Arbitration, Motion for Leave to File Fifth Amended Petition and Motion to Set Case on Trial Docket and Enter Docket Control Order" ("Motion to Amend"). The Motion to Amend asked the trial court to amend its prior amended order compelling arbitration, and to deny arbitration as to the Huertas' claims against Garcia. In support of the motion, the Huertas introduced portions of the Settlement Agreement and argued that Wells Fargo's express waiver of its right to arbitrate under the arbitration agreement operated as a waiver of Garcia's right to arbitrate under the same agreement. After a hearing, the trial court granted the Motion to Amend, and amended the order compelling arbitration "so as to deny arbitration as to Albert Garcia and his assumed names and related companies based on the additional evidence of express waiver of the arbitration agreement by the Wells Fargo Parties." Garcia now appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2010)

(permitting interlocutory appeal of order denying motion to compel arbitration under the Federal Arbitration Act).

On appeal, Garcia contends the trial court erred in granting the Motion to Amend because (1) it conflicts with our prior mandamus opinion ordering the trial court to compel arbitration and (2) Wells Fargo was not entitled to waive arbitration on Garcia's behalf. Garcia alternatively argues he is entitled to enforce the arbitration agreement under the doctrine of equitable estoppel.

### STANDARD OF REVIEW AND APPLICABLE LAW

Until recently, orders denying motions to compel arbitration in matters subject to the Federal Arbitration Act (FAA) were not subject to interlocutory appeal; instead, they were reviewed in mandamus proceedings using an abuse of discretion standard. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272-73 (Tex. 1992). Under that standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations *de novo*." *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

Section 51.016 now permits courts to review such orders by appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016; *In re 24R, Inc.*, 324 S.W.3d 564, 566 n.1 (Tex. 2010). This court has not addressed the standard of review applicable to such appeals. However, on appeals of orders denying arbitration under the Texas Arbitration Act (TAA), we apply a no-evidence standard to the trial court's factual determinations and a *de novo* standard to legal determinations. *See MacIvor v. Zuehl Airport Flying Cmty. Owners Assoc.*, No. 04-10-00053-CV, 2010 WL 2298906, at *2 (Tex. App.—San Antonio June 9, 2010, no pet.) (mem. op) (applying *de novo* review to interlocutory appeal of order denying motion to compel arbitration under TAA when order turns on a legal determination); *Pony Exp. Courier Corp. v. Morris*, 921

S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ) (noting that "no evidence" is the appropriate standard when reviewing factual questions concerning an order denying arbitration). When a matter involving both factual determinations and legal conclusions is decided by the trial court, we generally employ the abuse of discretion standard, in which we defer to the trial court's factual determinations while determining questions of law *de novo*. *Morris*, 921 S.W.2d at 820. Accordingly, we will apply the abuse of discretion standard of review to interlocutory appeals under section 51.016. *See Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862-63 (Tex. App.—Dallas 2010, no pet.) (applying abuse of discretion standard in reviewing interlocutory appeal under section 51.016).

Whether there is a valid and enforceable agreement to arbitrate is a legal question subject to *de novo* review. *In re Labatt Food Service*, 279 S.W.3d at 643; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). There is a strong presumption favoring arbitration, which arises only after the party seeking to compel arbitration proves a valid arbitration agreement exists. *Webster*, 128 S.W.3d at 227. Under both the FAA and the TAA, we apply ordinary state contract law principles in order to decide whether a valid arbitration agreement exists. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Once a valid agreement to arbitrate has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); *In re Hartigan*, 107 S.W.3d 684, 687-88 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]).

**DISCUSSION**

We first address Garcia's contention that Wells Fargo's waiver of arbitration contained in the Settlement Agreement did not extend to waive Garcia's right to arbitration. In our prior opinion, we noted that Garcia was an agent of Wells Fargo, and that the Huertas' claims against Garcia related to his behavior as Wells Fargo's agent. *Wells Fargo*, 300 S.W.3d at 825; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (nonsignatory may be bound to arbitration agreement by agency law). We thus held that Garcia was entitled to enforce the arbitration agreement as an agent of Wells Fargo. *Wells Fargo*, 300 S.W.3d at 825; *see also In re Merrill Lynch Trust Co.*, 123 S.W.3d 549, 556 (Tex. App.—San Antonio 2003, orig. proceeding), *mand. granted*, 235 S.W.3d 217 (Tex. 2007) (orig. proceeding) (per curiam) ("The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable.").

Having already established that Garcia is entitled to enforce the arbitration agreement, we must now determine whether Wells Fargo's express waiver of its own right to arbitrate contained in the Settlement Agreement operated to deny Garcia his right to enforce the arbitration agreement. Whether a party has waived his right to arbitration is a question of law that we review *de novo*, giving no deference to the trial court's ruling. *Wells Fargo*, 300 S.W.3d at 830 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008)). In the arbitration context, the majority of cases alleging waiver involve the invocation of the legal process to one party's detriment. *See, e.g., In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding); *Perry*, 258 S.W.3d at 589-90. The Huertas did not allege waiver based on

invocation of the judicial process; rather, they asserted that Wells Fargo's express waiver contained in the Settlement Agreement must be imputed to Garcia because he acted as an agent of Wells Fargo, and his right to arbitration was therefore derivative of Wells Fargo's. The Huertas cite no authority for this proposition, and we cannot agree that one party's waiver of the right to arbitration can be imputed to another.

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Id*. Here, the Huertas did not allege that Garcia himself acted in such a way so as to repudiate his right to enforce the arbitration agreement, and there is no evidence in the record of a knowing or intentional waiver by Garcia. Additionally, the Huertas have not alleged that Garcia did anything inconsistent with an intent to rely on the arbitration process. To the contrary, Garcia has consistently invoked his right to enforce the arbitration agreement during the entire course of this proceeding, both before and after this Court issued its opinion in *In re Wells Fargo*. The mere fact that Wells Fargo subsequently waived "any rights to enforce the arbitration agreement as it . . . relate[s] to any claims asserted against Garcia" does not mean that Garcia—who relied upon this Court's holding that he had the right to enforce the agreement—also waived his right to enforce the arbitration agreement.

Further, there is a strong presumption against waiver under the FAA, *In re D. Wilson*, 196 S.W.3d at 783, and any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co*., 988 S.W.2d 702, 705 (Tex. 1998). In light of this presumption, and acknowledging the lack of evidence of waiver by Garcia, we cannot conclude that Wells Fargo's

waiver of arbitration was imputed to Garcia. Accordingly, we hold the trial court erred in denying arbitration to Garcia on the basis of express waiver by Wells Fargo. We reverse the judgment of the trial court, and remand the cause to the trial court with instructions to enter an order compelling arbitration as to Garcia and staying all other proceedings pending the outcome of arbitration. Based on our resolution, we need not reach Garcia's arguments relative to the law of the case or equitable estoppel.

Phylis J. Speedlin, Justice