Opinion by: Jason Pulliam, Justice
INTRODUCTION
This appeal arises from the trial court's denial of a motion to compel arbitration and to enforce a class action waiver provision contained within loan documents between the Cash Biz appellants and its customers. The issues on appeal are: (1) whether the Plaintiff borrowing parties' alleged causes of action fall within the scope of the arbitration provision contained within the loan documents, and if so, (2) whether Cash Biz waived the right to enforce the arbitration provision because it substantially invoked the judicial process by filing criminal complaints against the borrowing parties. Dependent upon whether the arbitration provision applies, the parties also dispute whether the Plaintiff borrowing parties waived the ability to proceed through a class action.
We conclude the Plaintiff borrowing parties' causes of action fall within the scope of the parties' arbitration agreement, and Cash Biz's filing of a criminal complaint was not an act that substantially invoked the judicial process to constitute waiver of this agreement. We conclude the Plaintiff borrowing parties waived the right to bring a class action. Accordingly, we reverse the trial court's order denying Cash Biz's motion to compel arbitration and denying Cash Biz's motion to enforce the class action waiver provision. We render an order granting Cash Biz's motion. We remand for arbitration.
*346 FACTUAL BACKGROUND
Cash Biz, LP, Redwood Financial, LLC, and Cash Zone, LLC d/b/a Cash Biz (collectively referred to as "Cash Biz") provide short-term consumer loans, also known as "payday loans." See TEX. FIN. CODE ANN. § 393.221 (defining a payday loan). As is normal practice with "payday loans", Cash Biz required all borrowers to provide a post-dated personal check in the amount of the loan plus the finance charge. As a general practice, if a borrower defaulted, Cash Biz deposited the post-dated check on the loan's due date in satisfaction of the loan.
Also as part of the process of obtaining the loan, borrowers signed written credit service agreements along with disclosure statements, promissory notes, and security agreements (collectively, "Loan Contracts"). Each written credit service agreement contained a provision entitled "Waiver of Jury Trial and Arbitration Provision" (hereinafter referred to as "arbitration provision"). This arbitration provision requires arbitration of any of the following "disputes":
the words "dispute and "disputes" are given the broadest possible meaning and include, without limitation
• (a) claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision;
• (b) all federal or state law claims ... arising from or relating directly or indirectly to this Agreement ..., any past and/or future claims or disputes between you and us and/or any Lender who provides you with a loan as a result of our services; ...
• (d) all common law claims, based upon contract, tort, fraud, or other intentional torts;
• (e) all claims based upon a violation of any state or federal constitution, statute, or regulation;
• (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; ...
• (g) all claims asserted by you individually against us ... including claims for money damages and/or equitable or injunctive relief; ...
• (i) all claims asserted by you as a private attorney general, as a representative and member of a class ... against us ...; and/or
• (j) all claims arising from or relating directly or indirectly to the disclosure by us ... of any non-public personal information about you.
In addition, relevant to this appeal, the arbitration provision states:
You acknowledge and agree that by entering into this Arbitration Provision:
(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US, THE LENDER AND/OR OUR/ITS RELATED THIRD PARTIES; ... and
(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE ... OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY LAWSUIT FILED AGAINST US....
Finally, the arbitration provision contains a waiver of class action in arbitration provision, which states,
all disputes ... shall be resolved by binding arbitration only on an individual *347 basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION .... Notwithstanding any other provision herein to the contrary, the validity, effect, enforceability of this waiver of class action lawsuit and class-wide arbitration shall be determined solely by a court of competent jurisdiction and not by the arbitrator.
Hiawatha Henry, Addie Harris, Montray Norris, and Roosevelt Coleman, Jr. (the Borrowing Parties) obtained loans from Cash Biz and subsequently defaulted on their repayment obligations. Cash Biz attempted to deposit the post-dated checks written upon execution of the loan documents; however, the checks were declined based upon insufficient funds.
Cash Biz contacted the applicable local district attorneys and submitted information necessary to make a criminal complaint, stating these borrowers "engaged in criminal conduct during the formation and performance of the loan transactions, including the issuance of bad checks and check fraud." The district attorneys then filed criminal charges against each of the Borrowing Parties for violation of Texas Penal Code Section 32.41, which prohibits issuance of "bad checks". But see TEX. PENAL CODE ANN. § 32.41 (West Supp. 2015) (offense requires issuer's knowledge of insufficient funds at the time of issuance; knowledge may be presumed except for postdated check ).
The criminal charges against each of the Borrowing Parties were eventually dismissed; however, several of the Borrowing Parties were arrested and detained. In addition, other Cash Biz borrowers within the purported class faced criminal convictions for theft by check and were assessed jail time, restitution, and fines as punishment.
PROCEDURAL BACKGROUND
On January 30, 2015, the Borrowing Parties filed a class action petition on behalf of themselves and all others similarly situated in Texas,[1] alleging Cash Biz: (1) illegally and wrongfully used the criminal justice system to collect payday loans through the wrongful filing of criminal charges; (2) illegally and wrongfully threatened its customers with criminal prosecution for failure to repay payday loans in violation of the Texas Finance Code, Texas Penal Code, and Texas Constitution; and (3) illegally and wrongfully classified post-dated checks as bad checks and pursued criminal charges against its customers in violation of the Finance Code and Penal Code. The Borrowing Parties alleged Cash Biz engaged in the described conduct knowing it was in violation of the law.[2]
Based upon these allegations, the Borrowing Parties pled specific causes of action *348 of malicious prosecution, fraud, violation of the DTPA, and violation of Finance Code Section 393.301. Cash Biz filed a motion to compel arbitration under the Loan Contracts and to enforce the class action waiver provision within the arbitration provision. Cash Biz requested that the trial court compel individual arbitration with each Plaintiff and stay the action pending completion of the individual arbitrations.
At the conclusion of the hearing on the motion, the trial court denied Cash Biz's motion to compel and enforce the arbitration and class action waiver provisions and signed a written order finding:
(1) the plaintiffs' claims "relate solely to Cash Biz's illegal use of the criminal justice system to enforce a civil debt";
(2) the challenged conduct occurred after the expiration of any contracts entered into by the Borrowing Parties; and
(3) all of the damages are "solely related to criminal fines, jail time, and loss of reputation related to plaintiffs' criminal convictions."
Based on these findings, the trial court concluded the arbitration provision and class action waiver within the Loan Contracts are "not applicable" to the type of action brought by the Borrowing Parties. In addition, the trial court concluded Cash Biz waived its right to arbitration by substantially invoking the judicial process when it "filed criminal charges against Plaintiffs, participated in criminal trials, obtained criminal judgments, and attempted to collect from Plaintiffs." Cash Biz perfected this interlocutory appeal pursuant to Texas Civil Practice and Remedies Code Sections 51.016 and 171.098.
ANALYSIS
Burden of Proof to Compel Arbitration
A party seeking to compel arbitration bears the burden to establish (1) the existence of a valid agreement to arbitrate; and (2) the claims in dispute fall within the scope of the arbitration agreement. In re Rubiola , 334 S.W.3d 220, 223 (Tex. 2011) ; J.M. Davidson v. Webster , 128 S.W.3d 223, 227 (Tex. 2003). If the party seeking arbitration meets its two-pronged burden to establish the agreement's validity and scope, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement, such as, in this case, waiver of arbitration. Venture Cotton Co-op. v. Freeman , 435 S.W.3d 222, 227 (Tex. 2014) ; J.M. Davidson , 128 S.W.3d at 227.
Standard of Review
An appellate court will review a trial court's order denying a motion to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the record and reviewing legal determinations de novo. In re Labatt Food Serv., L.P. , 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); Bonded Builders Home Wty Ass'n of Texas, Inc. v. Smith , 488 S.W.3d 468, 475-76 (Tex. App.-Dallas 2016, no. pet. h.) ; Garcia v. Huerta , 340 S.W.3d 864, 868 (Tex. App.-San Antonio 2011, pet. denied). A trial court's determination whether a valid arbitration agreement exists and whether the claims in dispute fall within the scope of an arbitration agreement are legal determinations subject to de novo review. In re Labatt , 279 S.W.3d at 643 ; J.M. Davidson, Inc. , 128 S.W.3d at 227. If the moving party satisfies its burden of proof, the trial court has no discretion but to grant the motion to compel arbitration unless the opposing party satisfies its burden to prove an affirmative *349 defense. Henry v. Gonzalez , 18 S.W.3d 684, 688-89 (Tex. App.-San Antonio 2000, pet. dism'd by agrm't) ; Dallas Cardiology Assoc., P.A. v. Mallick , 978 S.W.2d 209, 212 (Tex. App.-Texarkana 1998, writ denied).
In this case, the only affirmative defense at issue is waiver of the right to arbitrate. Determination whether a party waived its right to arbitrate presents a question of law subject to de novo review. Sedillo v. Campbell , 5 S.W.3d 824, 826 (Tex. App.-Houston [14th Dist.] 1999). If the opposing party satisfies its burden, the trial court must deny the motion to compel arbitration. See Henry , 18 S.W.3d at 688-89 ; see also In re FirstMerit Bank, N.A. , 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding); In re Washington Mut. Fin., L.P. , 173 S.W.3d 189, 192 (Tex. App.-Corpus Christi 2005, no pet.).
Issue One: Enforcement of the Arbitration Provision
On appeal, Cash Biz challenges the trial court's denial of its motion to compel arbitration contending it satisfied its burden of proof to compel arbitration, and the Borrowing Parties failed to establish waiver. The parties do not contest the first element of Cash Biz's burden of proof: whether a valid arbitration agreement exists. Instead, Cash Biz's appellate argument focuses on the second prong: whether the claims in dispute fall within the scope of the parties' arbitration provision.
1. Cash Biz's Burden of Proof to Compel Arbitration:Whether the Borrowing Parties' asserted claims fall within the scope of the arbitration provision
On appeal, Cash Biz argues it proved the Borrowing Parties' claims fall within the scope of the arbitration provision because the supporting factual allegations, contending Cash Biz used the criminal justice system to enforce a civil debt arise out of the Loan Contract which created the civil debt and which contains the arbitration provision. Cash Biz contends these factual allegations and basis of the action are encompassed within the broad definition of "dispute" in the arbitration provision.
The Borrowing Parties assert their claims are not based on the parties' legal relationship created by the Loan Contract, but arise independently based upon Cash Biz's ancillary action of illegally initiating criminal prosecutions against them.
Applicable Law
When determining whether a particular claim falls within the scope of an arbitration agreement, courts employ a strong presumption in favor of arbitration. In re Rubiola , 334 S.W.3d at 225 ; Prudential Sec. Inc. v. Marshall , 909 S.W.2d 896, 899 (Tex. 1995). Any doubt as to whether a claim falls within the scope of a valid arbitration agreement must be resolved in favor of arbitration. In re Rubiola , 334 S.W.3d at 225 ; Prudential Sec. Inc. , 909 S.W.2d at 899.
Under a broad arbitration clause, arbitration can be compelled even though a particular dispute that arises between the parties does not specifically pertain to formation of, or obligations created by, the originating contract. See In re Conseco Fin. Servicing Corp. , 19 S.W.3d 562, 570 (Tex. App.-Waco 2000, orig. proceeding) (holding broad arbitration provision encompassed statutory and tort claims not based on the formation, negotiation, terms, or performance of contract); AutoNation USA Corp. v. Leroy , 105 S.W.3d 190, 197 (Tex. App.-Houston [14th Dist.] 2003, no pet.) ; Hou-Scape, Inc. v. Lloyd , 945 S.W.2d 202, 205-06 (Tex. App.-Houston [1st Dist.] 1997, no writ). To determine whether a claim falls within the scope of *350 the agreement, courts must focus on the factual allegations outlined in the petition, rather than the legal causes of action asserted. Prudential Sec. Inc. , 909 S.W.2d at 899 ; Hou-Scape, Inc. v. Lloyd , 945 S.W.2d at 205.
If the facts alleged in support of a cause of action have a "significant relationship" to or are "factually intertwined" with an underlying contract that contains the arbitration agreement, then the asserted cause of action is within the scope of the arbitration agreement. See Pennzoil Co. v. Arnold Oil Co. , 30 S.W.3d 494, 498 (Tex. App.-San Antonio 2000, orig. proceeding) ; Hou-Scape, Inc. v. Lloyd , 945 S.W.2d at 205-06. If the facts alleged stand alone and are completely independent of the contract, the asserted cause of action is not subject to arbitration. Pennzoil , 30 S.W.3d at 498.
Application
Here, the Borrowing Parties' allege in their first amended class action petition that Cash Biz "illegally and wrongfully used the criminal justice system to collect payday loans," "illegally and wrongfully threatened its customers with criminal prosecution," and "illegally and wrongfully classified post-dated checks as bad checks and pursued criminal charges."
While the torts alleged are based upon independent acts outside the formation or performance of the Loan Contracts, the arbitration provision compels a very broad definition of "dispute". By defining "dispute" as "all common law claims based upon tort, fraud, or other intentional tort", this broad definition encompasses all claims based on acts that occur outside the formation or performance of the Loan Contracts, and specifically the causes of action alleged here. Therefore, the causes of action alleged by the Borrowing Parties against Cash Biz fall within the broad definition of "dispute" with the arbitration provision. This broad definition, which encompasses "any claim" between the parties, is limited only by the legal requirement that the facts be "intertwined" or have a "substantial relationship." See Pennzoil Co. , 30 S.W.3d at 498 ; Hou-Scape, Inc. , 945 S.W.2d at 205-06.
The factual allegations within the first amended petition focus upon Cash Biz's filing of criminal complaints against the Borrowing Parties to collect on the civil debt created by the Loan Contracts. As alleged, the Loan Contracts serve as basis for the underlying allegations because the Borrowing Parties' civil debt arose out of the Loan Contracts, and the existence of this debt served as the impetus for Cash Biz to complain of criminal activity. For this reason, the facts alleged in support of the asserted causes of action have a significant relationship to and are factually intertwined with the underlying Loan Contracts. Although the allegations are centered upon tortious conduct that does not pertain to the parties' obligations within the Loan Contracts, these alleged torts would not have occurred except for the existence of the Loan Contracts.
Because the facts as alleged to support the causes of action are factually intertwined with the Loan Contracts and because the broad definition of "dispute" within the arbitration provision encompasses these allegations, Cash Biz satisfied its burden of proof to show the claims in dispute fall within the scope of the arbitration provision. Thus, the burden of proof shifted to the Borrowing Parties to establish an affirmative defense, that is, waiver of the right to enforce the arbitration provision. Venture Cotton Co-op. , 435 S.W.3d at 227 ; J.M. Davidson , 128 S.W.3d at 227.
2. The Borrowing Parties' Burden of Proof to Defeat Arbitration: Whether *351 Cash Biz Waived its Right to Enforce Arbitration Agreement
The Borrowing Parties' sole defense to arbitration is Cash Biz waived its right to arbitrate by substantially invoking the judicial process through its filing of criminal complaints. Accordingly, the Borrowing Parties assert Cash Biz sought to obtain a satisfactory result of repayment of the civil debts through restitution.
Cash Biz responds it merely provided information to support a complaint of potentially criminal activity, and the prosecuting district attorneys facilitated independent investigation and arrest. Because the district attorneys held discretion whether to file and/or prosecute criminal charges, Cash Biz asserts it did not invoke any judicial process.
Applicable Law
As a defense to a motion to compel arbitration, the opposing party may show that the party seeking arbitration either expressly or impliedly waived its right to enforce the arbitration agreement. Perry Homes v. Cull , 258 S.W.3d 580, 584 (Tex. 2008). Whether waiver occurs depends on the individual facts and circumstances of each case. See Pilot Travel Ctrs v. McCray , 416 S.W.3d 168, 183 (Tex. App.-Dallas 2013, no pet.) ; Southwind Group, Inc. v. Landwehr , 188 S.W.3d 730, 735 (Tex. App.-Eastland 2006, no pet.). To establish an implied waiver of a right to enforce arbitration, a party must show, based upon the totality of circumstances: (1) the party seeking arbitration substantially invoked the judicial process; and (2) the party opposing arbitration suffered actual prejudice as a result. G.T. Leach Builders, LLC v. Sapphire V.P., LP , 458 S.W.3d 502, 511-12 (Tex. 2015) ; Perry Homes v. Cull , 258 S.W.3d 580, 589-93 (Tex. 2008) ; Williams Indus., Inc. v. Earth Dev. Sys. Corp. , 110 S.W.3d 131, 135 (Tex. App.-Houston [1st Dist.] 2003, no pet.). Again, because public policy favors arbitration, there is a strong presumption against finding a party waived its right to arbitration. In re Bruce Terminix Co. , 988 S.W.2d 702, 704-05 (Tex. 1998) (orig. proceeding); EZ Pawn Corp. v. Mancias , 934 S.W.2d 87, 89 (Tex. 1996) (orig. proceeding). The burden to prove waiver is thus a heavy one, and any doubts regarding waiver are resolved in favor of arbitration. Perry Homes , 258 S.W.3d at 584 ; In re Bruce Terminix Co. , 988 S.W.2d at 705.
No Texas caselaw addresses the specific issue whether the filing of a criminal complaint constitutes substantial invocation of a judicial process to constitute waiver of arbitration in a civil suit. However, caselaw establishing factors to consider and interpreting acts which constitute substantial invocation apply to guide this determination under these facts.
With regard to the first prong, in determining whether the party seeking arbitration substantially invoked the judicial process, courts review the circumstances of each case to determine whether a party made specific and deliberate acts after suit was filed that are inconsistent with its right to arbitrate or if a party otherwise engaged in active participation to substantially invoke judicial process.[3] See Pilot Travel Ctrs , 416 S.W.3d at 183 ; Southwind Group, Inc. , 188 S.W.3d at 735 ;
*352 Sedillo , 5 S.W.3d at 827. This requisite action necessitates more than filing suit or initiation of litigation; a party must engage in deliberate conduct inconsistent with the right to arbitrate, that is, an active attempt to achieve a satisfactory result through means other than arbitration. See e.g. G.T. Leach Builders, LLC , 458 S.W.3d at 512 (holding no waiver by asserting counterclaims, seeking change of venue, filing motions to designate responsible third parties, for continuance, and to quash depositions, designating experts and waiting six months to move for arbitration); Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C. , 455 S.W.3d 573, 576 (Tex. 2014) (holding no waiver by initiating lawsuit, invoking forum-selection clause, moving to transfer venue, propounding request for disclosure, and waiting nineteen months after being sued to move for arbitration); In re Fleetwood Homes of Texas, L.P. , 257 S.W.3d 692, 694 (Tex. 2008) (holding no waiver by noticing deposition, serving written discovery, and waiting eight months to move for arbitration); In re Bruce Terminix , 988 S.W.2d at 703-04 (holding no waiver by propounding requests for production and interrogatories and waiting six months to seek arbitration); EZ Pawn Corp. , 934 S.W.2d at 88-89 (holding no waiver by propounding written discovery, noticing deposition, agreeing to reset trial date, and waiting nearly a year to move for arbitration). To waive arbitration, the party must "engage in some overt act in court that evince[s] a desire to resolve the arbitrable dispute through litigation rather than arbitration." Tuscan Builders, LP v. 1437 SH6 L.L.C. , 438 S.W.3d 717, 721 (Tex. App.-Houston [1st Dist.] 2014, pet. denied) ; Haddock v. Quinn , 287 S.W.3d 158, 177 (Tex. App.-Fort Worth 2009, pet. denied).
Within the context of a criminal case,
[a] person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.
Browning-Ferris Indus., Inc. v. Lieck , 881 S.W.2d 288, 293 (Tex. 1994) ; Daniels v. Kelley , 2010 WL 2935789, at *4 (Tex. App.-San Antonio July 28, 2010, no pet.) (mem. op.).
Application
To prove Cash Biz waived arbitration, the Borrowing Parties presented evidence consisting of a series of criminal case summaries and a case list of criminal cases initiated in Harris County Justice of the Peace court. This evidence reveals Cash Biz was the "complainant" in a number of criminal cases, including those of the named Borrowing Parties, which resulted in criminal charges for "issuance of bad check".
To refute this assertion, Cash Biz presented an affidavit and supplemental affidavit of David Flanagan, an "authorized representative" whose "principal business for Cash Biz includes all general affairs and operations of the business." In his supplemental affidavit, Flanagan attested:
Cash Biz simply left the information entirely to the discretion of the district attorney, and any action taken by the district attorney thereafter was made completely on his/her own. Cash Biz did not make any formal charges, did not participate in any criminal trial, and did not obtain criminal judgments. Similarly, *353 Cash Biz was neither a witness in any criminal proceeding nor was it asked to appear in any such proceeding.
The case list presented by the Borrowing Parties impliedly reveals that absent Cash Biz's complaint, no criminal prosecution would have occurred. The case list does not reflect, however, the extent of Cash Biz's involvement in the criminal process, which is necessary for determination of the issue whether Cash Biz substantially invoked the judicial process.
The trial court's order contains fact findings that Cash Biz "filed criminal charges against Plaintiffs, participated in criminal trials, obtained criminal judgments, and attempted to collect from Plaintiffs." While this court must defer to the trial court, as fact finder, this deference is limited to those fact findings supported by the record. See In re Labatt Food Serv., L.P. , 279 S.W.3d at 643 ; Bonded Builders Home Wty Ass'n of Texas, Inc. , 488 S.W.3d at 475-76 ; Garcia , 340 S.W.3d at 868. Here, the trial court's fact findings are not supported by the record. The case list and summaries presented do not reflect that Cash Biz "participated in criminal trials, obtained criminal judgments, and attempted to collect from Plaintiffs." The evidence submitted reveals only that Cash Biz provided information and filed criminal complaints against the Borrowing Parties. The only evidence submitted that pertains to the trial court's fact findings is Flanagan's supplemental affidavit, which is contrary to all of the trial court's findings. Flanagan attests Cash Biz did not initiate criminal proceedings and did not participate in, or was in any way involved in, the criminal prosecution of the Borrowing Parties. Consequently, this court need not defer to these specific fact findings. See In re Labatt Food Serv., L.P. , 279 S.W.3d at 643 ; Bonded Builders Home Wty Ass'n of Texas, Inc. , 488 S.W.3d at 475-76 ; Garcia , 340 S.W.3d at 868.
In any event, Cash Biz presents a limited issue on appeal, and the Borrowing Parties limit their argument on appeal, to the issue whether Cash Biz's filing of criminal complaints was sufficient to constitute waiver of the contractual right to arbitrate. The borrowing Parties do not present argument that Cash Biz engaged in any conduct beyond the filing of criminal complaints. The evidence that pertains to this limited issue is not disputed, that is, Cash Biz provided information and filed criminal complaints against the Borrowing Parties. Therefore, this court's determination of waiver need only focus on this undisputed evidence.
Cash Biz's filing of a criminal complaint does not rise to the extent of active engagement in litigation that Texas courts have consistently held to be specific and deliberate actions inconsistent with a right to arbitrate or that display an intent to resolve a dispute through litigation. To begin, courts consistently evaluate a party's conduct after suit is filed to determine whether it waived its right to arbitration. See Pilot Travel Ctrs , 416 S.W.3d at 183 ; Sedillo , 5 S.W.3d at 827 ; Nationwide of Bryan, Inc. v. Dyer , 969 S.W.2d 518, 521 (Tex. App.-Austin 1998, no pet.). Here, the parties focus on Cash Biz's conduct in a separate proceeding before the underlying litigation was filed by the Borrowing Parties. Further, under these facts, Cash Biz was not a party to the criminal prosecutions and did not serve as a witness or provide any interviews to facilitate prosecution. Cash Biz's actions, though presumably vindictive, do not evince a desire to achieve repayment of any loans through the criminal process. Thus, Cash Biz's actions were not sufficiently active or deliberate to constitute substantial invocation of the judicial process. See *354 G.T. Leach Builders, LLC , 458 S.W.3d at 512 ; Richmont Holdings, Inc. , 455 S.W.3d at 576. Finally, Cash Biz's actions, even if wrong, were insufficient to rise to the level of "substantial invocation" of a litigation process. In Texas, the filing of criminal charges and initiation of criminal process is the discretion of the prosecuting attorney. Even if this court were to construe Cash Biz's preliminary act as an initiation of litigation to "achieve a satisfactory result," the filing of suit or initiation of litigation is not "substantial invocation of judicial process". See G.T. Leach Builders, LLC , 458 S.W.3d at 512 ; Richmont Holdings, Inc. , 455 S.W.3d at 576. Therefore, the filing of a criminal complaint, though the impetus for initiation of criminal process, is insufficient to be construed as substantial invocation of a judicial process.
Conclusion
As in precedential and persuasive cases involving similar or greater participation in litigation than occurred here, we decline to find waiver under these circumstances. Consequently, the Borrowing Parties failed to satisfy their burden of proof to establish Cash Biz waived its right to arbitration as a matter of law. Because the Borrowing Parties failed to satisfy the first prong of their burden of proof, we do not address the remaining prong: whether the Borrowing Parties were prejudiced by Cash Biz's actions.
Cash Biz's first issue is sustained.
Issue Two: Enforcement of the Class-Action Waiver Provision
The class-action waiver provision is not an independent agreement or provision, but is included within the arbitration provision in the Loan Contracts. Therefore applicability of the class action waiver provision is dependent upon the validity and applicability of the arbitration provision.
Cash Biz contends the trial court erred by denying its motion to enforce the class action waiver provision based upon the plain language of the provision, itself. The Borrowing Parties argue generally that the class action waiver does not apply under these facts for the same reasons and based upon the same arguments as that presented to dispel application of the arbitration provision.
We have already concluded the Borrowing Parties' asserted causes of action fall within the scope of the arbitration provision, and therefore, the provision applies, and further concluded Cash Biz did not waive its right to arbitration. This conclusion necessarily compels application of the class action waiver contained therein. Therefore, the class-action waiver contained within the arbitration provision must also apply, unless shown to be independently invalid. See NCP Fin. Ltd. P'ship v. Escatiola , 350 S.W.3d 152, 155 (Tex. App.-San Antonio 2011, no pet.).
Here, the Borrowing Parties do not contest the validity of the class action waiver provision. Absent any argument or basis to hold the class action waiver provision internally invalid, this court must conclude it applies, and the trial court erred by denying Cash Biz's motion to enforce the class action waiver provision.
Cash Biz's second issue is sustained.
CONCLUSION
For these reasons, the trial court's order denying Cash Biz's motion to compel arbitration and motion to enforce the class action waiver is reversed and order is rendered granting this motion. The cause is remanded and stayed pending completion of individual arbitration.

The proposed Class is defined as "[a]ll residents of the State of Texas who received a 'deferred presentment transaction' or payday loan as defined by Tex. Fin. Code § 393.221 from Cash Biz in the State of Texas and Cash Biz's pursuit of [sic] criminal charges to collect or recover the payday loan."

See Tex. Const. Art. 1, sec. 18 ("No person shall ever be imprisoned for debt."); see also Tex. Fin. Code Ann. § 392.301(a) (West 2006) ("In debt collection, a debt collector may not use threats, coercion or attempts to coerce that employ any of the following practices ... (2) accusing falsely or threatening to accuse falsely a person of fraud or any other crime"); Tex. Fin. Code Ann. § 393.201(c)(3) (West Supp. 2015) (credit services contract must state "a person may not threaten or pursue criminal charges against a consumer related to a check or other debit authorization provided by the consumer as security for a transaction in the absence of forgery, fraud, theft, or other criminal conduct.").

In the civil context, courts consider factors such as: (i) when the movant knew of the arbitration clause; (ii) the reason for any delay in moving to enforce arbitration; (iii) how much discovery was conducted; (iv) who initiated the discovery; (v) whether the discovery related to the merits; (vi) how much the discovery would be useful for arbitration; and (vii) whether the movant sought judgment on the merits. Perry Homes , 258 S.W.3d at 591-92.