**Opinion issued May 13, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00395-CV

————————————

**DARLING HOMES OF TEXAS, LLC, Appellant**

**V.**

**WADE & ALMA KHOURY; EARL & ROSE MCDONALD; MATTHEW & SANDRA NOVAK; JOHN & PENELOPE TIBBS; J. TIBBS FAMILY TRUST; KENNETH & KAREN BECK; ROY & PEGGY SLAY; DAVID & KATHLEEN ODORIZZI; BERNARD & JEANNIE OTTEN; CESAR GOMEZ & MARIA FLOTA; DEAN & KAREN CORBETT; JERE & TAMARA BRUBAKER; DARLENE DYMOND; JOHN & ELIZABETH WADELLA; MICHAEL & TAMI GIOVINAZZO; SALLY GRIFFIN, EDWARD WOLF & JENNIFER LAHTI; PAUL & DENICE MARSTON; TOMMY & REBECCA DRAKE; WALTER & EILEEN FENTON; KENT & JENNIFER TAROU; PENNY PRATER; THOMAS & LISA WOJAHN; JERRY WEBB; DEBRA WHITLA; JOAN FLOWERS; DAVID WILIAMS; LENWOOD & DONNA BORDELON; CHRIS & ELISABETH STAVINOHA; THOMAS & PAULETTE BARLOW; PATRICK & KAY HOLUB; EDWARD & DIANE STOWE; DAVID JUPP; JAMES & LAUREN SEAMANS; HAYWARD & NANCY KELLEY; TIMOTHY & IKYE SERRANO; RANDY & MICHELLE MOORMAN; TIMOTHY & MARY VAN OOST; LUIS & LILIANA CORDOBA; JEFF & MARGARET MOSS; DEAN & BRIDGET FANGUY; MARTIN & GEORGETTE BENSON;**

**JOSEPH MCGAUGH; CHERYL HARLAND; TORSTEN & JANA SCHMIDT; MORRIS & BARBARA REINISCH; FRANK & VALERIE GORE; DONALD & ELIZABETH HICKEY; THOMAS & JETTE BOEHME; JAMES & GAYLE SOEDER; KENWORTHY PAUL & LISA BOMGAARS; KEITH & SANDRA WINTERS; DREW & DONNA GOODBREAD; STEVE & DIANE CALKINS; JIMMY & DEBRA CRANE; STEPHEN & FRANCES CAPPS; GREG & BETH FOLKS; WENDELL & PHYLLIS CLEAVER; CHARLES & BONNIE MART; ROBERT CAPPADONA; ROBERT & MARCELLA MCCARTHY, MICHAEL & JESSICA RICHEY; JOE & DOROTHY MCADAMS; ALEX & JANETTE IRVINE; JAMES & MAUREEN DIEMER; DAVID & BRENDA KANDT; STEVEN RESNICK & JENNIFER MCCREADY-RESNICK; GLENN & MARGARET MCMILLEN; JOSEPH & SANDRA LOCKE; LAWRENCE & SUSAN DIO; MICHAEL & DONNA JONES; RICHARD & NANCY ROACH; LARRY & CAROLYN WARD; DEEPESH & NANDINI KAUSHISH; TIMOTHY & SUSAN DIXON; DEBRA KING; HECTOR GUIZAR-BLANCO & CARMEN MUNOZ-DIEGO; PAUL PEDLAR & SUZANNE HART; DAVID MA & VI NGUYEN; RAUL & ANNA GIORGI; ARCHIE GREGORY; SAUL SELLINGER; AND DENISE SELLINGER,**
Appellees

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-57183**

---

**MEMORANDUM OPINION**

Darling Homes of Texas, LLC appeals from the trial court's interlocutory order denying its motion to compel arbitration. The appellees, owners of homes built by Darling Homes, contend that the houses had construction defects that they discovered after flooding from Hurricane Harvey. They opposed the motion to compel arbitration based on procedural and substantive unconscionability.

2

We reverse the trial court's order denying the motion to compel arbitration and remand to the trial court.

## BACKGROUND

The appellees (the "homeowners") all own houses built by Darling Homes in The Woodlands Creekside West community in Harris County, Texas. All of the houses were built pursuant to one of two types of purchase agreements, both of which include an arbitration clause, referred to as the "Type 1" arbitration agreement and the "Type 2" arbitration agreement. The language of the arbitration agreements is similar but not identical.

All homeowners have alleged that that they were informed that their houses were not in a 100-year floodplain and flood insurance was not required. In addition, all homeowners have alleged that, when purchasing their houses, they relied on Darling Homes's representations that each house would be built at an elevation that would minimize the risk of flooding. All of the homeowners' houses flooded in response to Hurricane Harvey, and the homeowners discovered that their houses had not been built to the proper minimum slab elevation that would minimize the risk of flooding.

The homeowners made demand on Darling Homes for claims arising from the flooding and informed Darling Homes of their intent to file suit. Believing that the homeowners intended to violate the arbitration agreements incorporated into their

3

contracts, Darling Homes filed an application to compel arbitration under the Texas General Arbitration Act ("TAA"). *See* TEX. CIV. PRAC. & REM. CODE §§ 171.001–.098. After the homeowners filed suit, the trial court consolidated Darling Homes's application to compel arbitration with their lawsuit.

The homeowners objected to Darling Homes's application for arbitration. First, they argued that the contracts that Darling Homes attached to its application for arbitration were not properly authenticated. Second, they argued that the arbitration agreements were procedurally unconscionable because Darling Homes fraudulently induced them to enter into the purchase agreements in which the arbitration agreements were embedded. Third, they argued that the arbitration agreements were substantively unconscionable because most of the arbitration agreements required arbitration pursuant to construction industry rules and procedures of the American Arbitration Association ("AAA"). The homeowners maintained that under those rules they would owe an initial filing fee of $7,000, which is excessive compared to the filing fee for a lawsuit. They also asserted that the disparity in the parties' ability to pay arbitration fees was unfair to them and they could not "afford to pursue their claims through AAA arbitration."

Darling Homes responded by refiling all of the contracts that included the arbitration provision along with a business records affidavit. Darling Homes argued that the homeowners failed to support their unconscionability defenses with

4

evidence, including evidence that arbitration was unfairly expensive. In addition, it argued that allegations of fraudulent inducement to enter the purchase agreements would not render the embedded arbitration agreements unenforceable.

Before the trial court ruled on Darling Homes's application for arbitration, the homeowners filed supplemental objections. They argued that the Type 1 arbitration agreement is substantively unconscionable because it provides for arbitration to be conducted pursuant to the AAA Construction Industry Arbitration Rules, which the homeowners contend are unfairly biased in favor of Darling Homes. The homeowners further argued that the Type 1 arbitration agreement is unconscionable because it did not expressly inform them that they were waiving their rights to litigate disputes in court. The homeowners attached as evidence: (1) their original petition; (2) the Construction Industry Arbitration Rules; (3) the AAA administrative fee schedules; and (4) examples of the Type 1 and Type 2 purchase agreements. In addition, and without argument or explanation, the homeowners mentioned that the "Type 2" arbitration agreement gave Darling Homes sole discretion to determine whether to proceed pursuant to the Federal Arbitration Act ("FAA") or the TAA.

Darling Homes urged the trial court to disregard the homeowners' supplemental objections and to order the parties to arbitrate for the reasons it had previously argued. The trial court denied the application for arbitration, and Darling Homes filed this interlocutory appeal.

**ANALYSIS**

Darling Homes raises a single issue on appeal, arguing that the trial court erred by denying its application for arbitration. Included in this single issue, Darling Homes argues that it proved that the homeowners' claims arise from the purchase contracts and are within the scope of the arbitration agreements embedded in those contracts. Darling Homes also argues that the homeowners failed to prove their defenses of procedural and substantive unconscionability. The homeowners do not challenge the existence of valid contracts or that their claims are within the scope of the arbitration clauses. Rather, they maintain that the evidence they supplied was sufficient to support their affirmative defenses to enforcement of the arbitration agreements.

## I.    Jurisdiction; Standard of Review

We have jurisdiction to review an interlocutory order denying a motion to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (FAA); *id.* § 171.098(a)(1) (TAA); *see also Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (noting availability of appellate review under the FAA and the TAA). Ordinarily, we review a trial court's order denying a motion to compel arbitration for abuse of discretion, deferring to factual findings that are supported by evidence and determining legal questions de novo. *Weitzel v. Coon*, No. 01-19-00015-CV, 2019 WL 3418515, at *1 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.)

(mem. op.); *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 922 (Tex. App.—

Houston [1st Dist.] 2015, no pet.). However, because the "ultimate issue" of whether

an arbitration agreement is unconscionable is a question of law, when

unconscionability is the basis for the denial of a motion to compel arbitration—and

when there are no factual disputes—we will review the trial court's ruling de novo.

*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex.

2015).

## II.    Arbitration

"[H]istorically, Texas law favors settling disputes by arbitration."[*] *EZ Pawn*

*Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). "[A]rbitration is intended as a

lower cost, efficient alternative to litigation." *In re Olshan Found. Repair Co., LLC*,

328 S.W.3d 883, 893 (Tex. 2010); *see EZ Pawn Corp.*, 934 S.W.2d at 90

---

[*]    A public policy preference in favor of enforcing valid contractual arbitration agreements has long been enshrined in Texas and federal caselaw. *E.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019) (noting that Congress adopted the FAA to establish a federal policy favoring arbitration agreements); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (citing "national policy favoring arbitration"); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992); *Brazoria Cty. v. Knutson*, 142 Tex. 172, 179, 176 S.W.2d 740, 743 (1943) ("Arbitration is a proceeding so favored by Texas law that both our Constitution and statutes provide for the submission of differences to arbitration."); *see also Green v. Franklin*, 1 Tex. 497, 500 (1846) ("The awards of arbitrators have always been looked upon with peculiar favor, as it is a conciliatory mode of adjusting disputes by persons specially chosen for that purpose. If the proceedings before them have the appearance of fairness to both parties, mere technical objections will receive no countenance from the court.").

("Arbitration agreements, like the one here, offer a permissible choice to traditional litigation that does not favor either party.").

Arbitration is a creature of contract, and parties seeking to compel arbitration must rely upon an agreement to arbitrate. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (orig. proceeding); *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Arbitration agreements are "treated the same as other contracts." *Royston, Rayzor*, 467 S.W.3d at 504. A party seeking to compel arbitration must establish (1) the existence of a valid arbitration agreement and (2) that the claims asserted are within the scope of that agreement. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *Speedemissions*, 404 S.W.3d at 42 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *Parker*, 475 S.W.3d at 922. The existence of a valid arbitration agreement is a legal question which we resolve by applying contract principles. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding); *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *Parker*, 475 S.W.3d at 922. Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a strong presumption in favor of arbitration arises. *Kellogg Brown & Root*, 166 S.W.3d at 737–38; *see Ellis*, 337 S.W.3d at 862 ("[C]ourts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration."); *Olshan*

8

*Found. Repair*, 328 S.W.3d at 892 (arbitration is favored under both Texas and federal law).

After the proponent of arbitration has proven that the claims asserted are within the scope of a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement. *Royston, Rayzor*, 467 S.W.3d at 500; *Venture Cotton Co-op.*, 435 S.W.3d at 227. Arbitration clauses are separable from the contracts in which they are embedded. *Prima Paint Corp. v. Flood & Conkling Manuf. Co.*, 388 U.S. 395, 404 (1967); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 125 (Tex. 2018); *S.C. Maxwell Family P'ship, Ltd. v. Kent*, 472 S.W.3d 341, 343–44 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Thus, when ruling on a motion to compel arbitration, the court must determine whether any affirmative defenses relating solely to the arbitration clause bar its enforcement. *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008). Classic contract defenses—like unconscionability and fraudulent inducement—that are directed to the contract as a whole will be decided by the arbitrator. *RSL Funding*, 569 S.W.3d at 124; *see Perry Homes*, 258 S.W.3d at 589 ("[A]rbitrators must decide if an entire contract was fraudulently induced, while courts must decide if an arbitration clause was.").

## III.  Unconscionability

Ordinarily, we presume that an unambiguous contract reflects the intent of the contracting parties. *Venture Cotton Co-op.*, 435 S.W.3d at 228. Such contracts "are generally enforced as written 'regardless of whether one or more of the parties contracted wisely or foolishly, or created a hardship for himself.'" *Id.* (quoting *Wooten Props., Inc. v. Smith*, 368 S.W.2d 707, 709 (Tex. Civ. App.—El Paso 1963, writ ref'd); *see Royston, Rayzor*, 467 S.W.3d at 501 (party to written agreement is presumed to have knowledge of and understand its contents); *EZ Pawn Corp.*, 934 S.W.2d at 90 (same); *see also In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) ("Like any other contract clause, a party cannot avoid an arbitration clause by simply failing to read it."); *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by terms of the contract he signed, regardless of whether he read it or thought it had different terms.").

Texas law, however, recognizes an exception to the freedom of contract because "grossly unfair bargains should not be enforced." *Venture Cotton Co-op.*, 435 S.W.3d at 228. "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Olshan Found. Repair*, 328 S.W.3d at 892 (citing RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. b (1981)). Unconscionable contracts are

unenforceable. *Royston, Rayzor*, 467 S.W.3d at 499–500; *Olshan Found. Repair*, 328 S.W.3d at 892; *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

Arbitration clauses are separable, *see Prima Paint*, 388 U.S. at 404, and *RSL Funding*, 569 S.W.3d at 125, and embedded arbitration agreements may be unenforceable if they are substantively or procedurally unconscionable, or both. *Royston, Rayzor*, 467 S.W.3d at 499–500. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Palm Harbor Homes*, 195 S.W.3d at 677; *see In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) ("Substantive unconscionability refers to whether the arbitration provision ensures preservation of the substantive rights and remedies of a litigant."). Because an arbitration agreement functions as a forum-selection clause, *see Poly-America*, 262 S.W.3d at 352, the "'crucial inquiry' in determining unconscionability [is] 'whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights.'" *Venture Cotton Co-op.*, 435 S.W.3d at 231–32 (quoting *Olshan Found. Repair*, 328 S.W.3d at 894); *see Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (holding that statutory claims may be arbitrated "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.").

11

"Generally, a contract is unconscionable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Olshan Found. Repair,* 328 S.W.3d at 892 (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). Excessive arbitration costs may render contractual arbitration unenforceable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum. *Olshan Found. Repair*, 328 S.W.3d at 893; *see Green Tree*, 531 U.S. at 90.

A party opposing arbitration on the basis of unconscionability must supply "specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton Co-op.*, 435 S.W.3d at 231–32. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. The arbitration opponent should include evidence about the claimant's ability to pay the arbitration fees and costs, the actual cost of arbitration compared to the amount of damages, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims. *Olshan Found. Repair*, 328 S.W.3d at 893–95. Speculation about possible harm is insufficient to establish unconscionability. *Venture Cotton Co-op.*, 435 S.W.3d at 231–32; *see Green Tree*,

12

531 U.S. at 91 ("The 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."). Rather, the party opposing arbitration must offer evidence such as invoices, expert testimony, reliable cost estimates, and affidavits to prove the likelihood of incurring expected costs. *Olshan Found. Repair*, 328 S.W.3d at 895.

**IV.    The homeowners do not dispute that their claims arise from contracts and are within the scope of the arbitration agreements included in the contracts.**

In the trial court, the homeowners initially challenged the authenticity of the contracts that Darling Homes attached to its application for arbitration. However, Darling Homes then refiled the contracts with a business records affidavit. On appeal, the homeowners do not contend that their claims are not within the scope of valid arbitration agreements embedded in their purchase contracts.

The Type 1 arbitration agreement provides:

> **16.    DISPUTE RESOLUTION:** Any claim or dispute by and between Seller and Purchaser arising out of or relating to the Agreement or the sale, construction, or warranty of the Homesite ("Dispute") shall be resolved by binding arbitration by an arbitrator agreed upon by the parties and according to rules to be agreed upon by the parties. If the parties cannot reach an agreement on the arbitrator or the rules to govern the arbitration, then the Dispute shall be submitted for administration to the American Arbitration Association ("AAA") and resolved and in accordance with the Construction Industry Arbitration Rules of the AAA and the Federal Arbitration Act (Title 9, United States Code). Fees of the arbitrator and expenses charged by AAA shall be borne equally by the parties, provided that the prevailing party in the arbitration shall be entitled to reimbursement of such fees from the losing party. If the arbitration award recognizes validity to both parties'

action, responsibility for fees and expenses of the arbitration shall be apportioned by the arbitrator. Purchaser and Seller agree to be bound by this Dispute Resolution provision and agree that it shall survive closing of this Agreement. Nothing in this paragraph shall prevent a party from pursuing a claim of $10,000 or less in small claims court.

**Construction Defect Disputes:** Purchaser is advised that as a prerequisite to filing a construction defect claim in arbitration or small claims court, you must comply with notice procedures set forth in Chapter 27 of the Texas Property Code.

The Type 2 arbitration agreement provides in relevant part:

11) **DISPUTE RESOLUTION—ARBITRATION**

ANY AND ALL CLAIMS, CONTROVERSIES, BREACHES OR DISPUTES BY OR BETWEEN THE PARTIES HERETO, ARISING OUT OF OR RELATED TO THIS PURCHASE AGREEMENT, THE PROPERTY, THE SUBDIVISION OR COMMUNITY OF WHICH THE PROPERTY IS A PART, THE SALE OF THE PROPERTY BY SELLER, OR ANY TRANSACTION RELATING HERETO, WHETHER SUCH DISPUTE IS BASED ON CONTRACT, TORT, STATUTE, OR EQUITY, INCLUDING WITHOUT LIMITATION ANY DISPUTE OVER (a) THE DISPOSITION OF ANY EARNEST MONEY DEPOSIT HEREUNDER, (b) BREACH OF CONTRACT, (c) NEGLIGENT OR INTENTIONAL MISREPRESENTATION OR FRAUD, (d) NONDISCLOSURE, (e) BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, (f) ALLEGATIONS OF LATENT OR PATENT DESIGN OR CONSTRUCTION DEFECTS, INCLUDING WITHOUT LIMITATION, PURSUANT TO THE FEDERAL ARBTRATION ACT AND/OR THE TEXAS ARBITRATION ACT, AT SELLER'S ELECTION (NO INTERLOCUTORY APPEAL OF DENIAL OF FAA MOTION TO COMPEL ARBITRATION, MUST USE MANDAMUS), (g) THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PLANNING, SURVEYING, DESIGN, ENGINEERING, GRADING, SPECIFICATIONS, CONSTRUCTION OR OTHER DEVELOPMENT OF THE PROPERTY, THE PARCEL/TRACT OR THE COMMUNITY OF WHICH THE PROPERTY IS A PART,

(h) DECEPTIVE TRADE PRACTICES OR (i) ANY OTHER MATTER ARISING OUT OF OR RELATED TO THE INTERPRETATION OF ANY TERM OR PROVISION OF THIS AGREEMENT, OR ANY PROVISION OF THIS PURCHASE AGREEMENT, INCLUDING EARNEST MONEY DEPOSITS DISPUTES, THIS ARBITRATION AGREEMENT, ALLEGATIONS OF UNCONSCIONABILITY, FRAUD IN THE INDUCEMENT, OR FRAUD IN THE EXECUTION, WHETHER SUCH DISPUTE ARISES BEFORE OR AFTER THE CLOSE OF ESCROW (EACH A "DISPUTE"), SHALL BE ARBITRATED PURSUANT TO THE FEDERAL ARBITRATION ACT AND SUBJECT TO THE PROCEDURES SET FORTH AS FOLLOWS . . .

The homeowners alleged breach of express warranty, common law and statutory fraud relating to representations allegedly made by Darling Homes about the elevation to which the houses would be built, breach of implied warranty of good and workmanlike services, and breach of contract. These claims fall within the scope of both the Type 1 and Type 2 arbitration agreements.

## V. The homeowners did not show that procedural unconscionability justified the trial court's denial of the motion to compel arbitration.

### A. Arguments in the trial court and on appeal

In the trial court, the homeowners initially argued that the arbitration agreements were procedurally unconscionable because Darling Homes had allegedly fraudulently induced them into the contracts for the purchase of their houses. In their supplemental objection to the application for arbitration, the homeowners also alleged that the Type 1 arbitration agreement was procedurally

unconscionable because it did not include a notice that the homeowner was waiving the right to litigate disputes in court.

On appeal, the homeowners briefly address their fraudulent inducement argument on appeal, saying that they were unfairly deprived of discovery to prove fraudulent inducement. The homeowners assert that the Type 1 arbitration agreement was procedurally unconscionable because it did not include a notice that the homeowner was waiving the right to litigate disputes in court. They also argue on appeal that the Type 2 arbitration agreement was procedurally unconscionable because it included ambiguous language regarding the applicability of the TAA or the FAA. They reason that this ambiguous language "likely" gives the Seller the "unilateral choice of law" over any dispute within the scope of the arbitration agreement. They also complain that the ambiguous portion of the Type 2 arbitration agreement was difficult to read because it was all capitalized.

B.   Claims of fraudulent inducement do not demonstrate procedural unconscionability.

The homeowners' claims of fraudulent inducement are no evidence of procedural unconscionability of the arbitration agreement because these claims are directed to the contract as a whole. The homeowners' argument is that Darling Homes misrepresented the elevation to which their houses would be built, and they relied on that representation when entering into the purchase agreements. This is not an allegation that they were fraudulently induced into the arbitration agreement. *See*

16

*RSL Funding*, 569 S.W.3d at 124; *Perry Homes*, 258 S.W.3d at 589. Because the allegation of fraudulent inducement relates to the contract as a whole, it is a question for the arbitrator, not the court, and it is no evidence of procedural unconscionability. *See RSL Funding*, 569 S.W.3d at 124; *Perry Homes*, 258 S.W.3d at 589.

> **C.** **Claims about contract language do not demonstrate procedural unconscionability.**

> **1.** **Type 1 arbitration agreement**

The homeowners contend that the Type 1 arbitration agreement unconscionably failed to inform them that they were waiving the right to litigate disputes in court. Their contention about the language used in the Type 1 arbitration agreement does not demonstrate procedural unconscionability because, having had an opportunity to read the arbitration agreements and having signed them, they are legally presumed to know what was in the contract and to have assented to the terms. *See Venture Cotton Co-op.*, 435 S.W.3d at 228. We agree that the Type 1 agreement did not expressly state that the purchaser was waiving his or her right to adjudicate a dispute in court. However, the front page of the contract states in bold, capitalized letters: "**THIS CONTRACT CONTAINS AN ARBITRATION CLAUSE. SEE PARAGRAPH 16.**" The Type 1 contract also provided:

> **(17)  NO ORAL REPRESENTATIONS:** This Agreement and all attachments hereto and all documents executed in connection herewith constitutes the entire agreement between Purchaser and Seller regarding Purchaser's purchase of the Homesite and there are no agreements or representations, oral or written, not contained in this

17

Agreement. . . . Purchaser acknowledges that Purchaser . . . has read the entire Agreement including attachments and is fully bound thereby.

The homeowners make no argument and have provided no evidence that they were unaware that their disputes would be resolved by arbitration or that Darling Homes deceived them into believing otherwise. *See McKinney*, 167 S.W.3d at 835. We conclude that the homeowners did not show that the Type 1 arbitration agreement is procedurally unconscionable.

### 2.     Type 2 arbitration agreement

The homeowners contend that the Type 2 arbitration agreement was unclear as to whether the TAA or FAA applied and left that up to the seller's unilateral election. They also allege that the use of all capital letters in the arbitration agreement was evidence of procedural unconscionability. These contentions about the language used in the Type 2 arbitration agreement do not justify the trial court's denial of the motion to compel arbitration for two reasons. First, the homeowners did not show that that the circumstances surrounding the adoption of the arbitration provision were grossly unfair. *See Palm Harbor Homes*, 195 S.W.3d at 677. Second, paragraph 11(a) of the arbitration agreement itself delegates questions of substantive arbitrability to the arbitrator.

The homeowners argue that language in the Type 2 arbitration agreement is unclear as to whether the TAA or the FAA applies and suggests that Darling Homes has a unilateral right to determine whether to proceed to arbitration under the TAA

18

or the FAA. The Type 2 arbitration agreement includes a laundry list of types of claims that are included within its scope. Subpart (f) of that list states: "allegations of latent or patent design or construction defects, including without limitation, pursuant to the Federal Arbitration Act and/or the Texas Arbitration Act, at Seller's election (no interlocutory appeal of denial of FAA motion to compel arbitration, must use mandamus)." We agree that this language is ambiguous because it is grammatically nonsensical. Subpart (f) identifies allegations of latent or patent design or construction defects as a type of claim subject to arbitration, and then states: "including without limitation," suggesting that what follows would identify a nonexclusive list of claims that the parties will consider to be "allegations of latent or patent design or construction defects." Instead, what follows is "pursuant to the [FAA] and/or the [TAA], at Seller's election" and a parenthetical describing a historically accurate but outdated summary of Texas law regarding appellate review of denials of motions to compel arbitration.

We disagree, however, with the homeowners' contention that the Type 2 arbitration agreement is ambiguous about whether the TAA or the FAA applies. Subsection (c) of the Type 2 arbitration agreement provides: "[A]ny and all Disputes shall be arbitrated—which arbitration shall be mandatory and binding—pursuant to the Federal Arbitration Act." And subsection (n)(ii) of the agreement states: "If Buyer or Seller refuses to submit to arbitration after agreeing to this provision, Buyer

19

or Seller may be compelled to arbitrate under the Federal Arbitration Act." These unambiguous statements indicate that the arbitration under the Type 2 arbitration agreement is pursuant to the FAA.

We also disagree with the homeowners' contention that the use of capitalization made the arbitration agreement procedurally unconscionable because it made the text difficult to read. Parties to a contract are held to understand and have assented to the terms in the contract even if they have not read them. *See U.S. Home Corp.*, 236 S.W.3d at 764 ("Like any other contract clause, a party cannot avoid an arbitration clause by simply failing to read it."); *McKinney*, 167 S.W.3d at 835 (same)

A more fundamental reason exists for concluding that the homeowners' arguments about procedural unconscionability fail to support the trial court's denial of the motion to compel arbitration. The Type 2 arbitration agreement delegated questions of substantive arbitrability to the arbitrator:

> This arbitration agreement shall be deemed to be a self-executing arbitration agreement. ***Any dispute concerning*** the interpretation or ***the enforceability of this arbitration agreement***, ***including*** without limitation, its revocability or voidability for any cause***, any challenges to the enforcement*** or the validity ***of*** the agreement, or ***this arbitration agreement***, or the scope of arbitrable issues under this arbitration agreement, ***and any defense relating to the enforcement of this arbitration agreement***, including without limitation, waiver, estoppel, or laches, ***shall be decided by an arbitrator*** in accordance with this arbitration agreement ***and not by a court of law***.

> (Emphasis added).

20

Ordinarily arbitrability is determined by the court rather than the arbitrator, but parties may by contract provide that questions of arbitrability should be resolved by the arbitrator. *RSL Funding*, 569 S.W.3d at 120. This may be accomplished by express language or by expressly adopting rules, such as the AAA Commercial Arbitration Rules, that unmistakably delegate such issues to the arbitrator. *Weitzel v. Coon*, No. 01-19-00015-CV, 2019 WL 3418515, at *3 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.). The Type 2 arbitration agreement expressly delegated gateway issues of enforceability, including questions of unconscionability, to the arbitrator. Because there is a valid agreement to arbitrate that delegates arbitrability to the arbitrator, the trial court should have compelled arbitration and allowed the arbitrator to decide the questions relating to unconscionability of the Type 2 arbitration agreement. *See RSL Funding*, 569 S.W.3d at 121.

## VI. The homeowners did not show that substantive unconscionability justified the trial court's denial of the motion to compel arbitration.

### A. Type 1 arbitration agreement

The homeowners contend that the Type 1 arbitration agreement is substantively unconscionable because it shortened the statute of limitations and limited the buyer's legal remedies. They also contend that it was substantively unconscionable because it specified that the arbitration would be administered in

accordance with the AAA's Construction Industry Arbitration Rules, not the AAA's Home Construction Arbitration Rules.

### 1. Limitation on claims

Paragraph 29 of the Type 1 purchase agreement provides:

> **29.  LIMITATION ON CLAIMS:** Under no circumstances shall either Purchaser or Seller be liable for any special, indirect, or consequential damages including claims of mental anguish, except as otherwise specifically set forth in this Agreement. Any action or claim, regardless of form, which arises from or relates to this Agreement is barred unless it is brought by Purchaser or Seller not later than two (2) years and one (1) day from the date the cause of action accrues.

The homeowners contend that this provision demonstrates the one-sidedness of the Type 1 arbitration agreement. They argue that the limitations on remedies and the contractual shortening of the statute of limitations render the arbitration agreement unconscionable. In making this argument, they conflate this provision, paragraph 29, with the arbitration agreement, which is wholly contained in paragraph 16 of the Type 1 contract.

The homeowners rely, in part, on *In re Poly-America, L.P.*, 262 S.W.3d 337 (Tex. 2008) (orig. proceeding). But in *Poly-America*, the arbitration agreement was a stand-alone contract, and all the provisions discussed by the Texas Supreme Court were part of the arbitration agreement. 262 S.W.3d at 344. This is not so in this case. This case is more like *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009) (orig. proceeding), in which the arbitration agreement was embedded in another

contract. 279 S.W.3d at 648. Like the Supreme Court deciding *Labatt Food Service*, we do not reach the question of whether the challenged contractual provision is enforceable because the homeowners' challenge is not a challenge to the arbitration agreement. *Id.* at 648–49. Because the limitation on claims provision is separate from the arbitration agreement, the alleged unconscionability of it is a question for the arbitrator. *See id.*; *see also Prima Paint*, 388 U.S. at 409 (separability doctrine).

## 2. Construction Industry Arbitration Rules

The homeowners contend that the Type 1 arbitration agreement specifies that the agreement is governed by the AAA Construction Industry Arbitration Rules, and they argue about the ways in which those rules unfairly favor Darling Homes especially in comparison to the AAA Home Construction Arbitration Rules. But the homeowners misstate the Type 1 arbitration agreement, which provides that disputes "shall be resolved by binding arbitration by an arbitrator agreed upon by the parties and according to the rules to be agreed upon by the parties." The arbitration agreement does not require the use of the AAA Construction Industry Arbitration Rules unless the parties are unable to agree on an arbitrator and rules to govern the arbitration. The AAA Construction Industry Arbitration is only an alternative. The homeowners have presented no evidence that Darling Homes refused to agree to an arbitrator and rules other than the allegedly biased Construction Industry Arbitration Rules. Thus, we conclude that they did not meet their burden to prove their claim of

substantive unconscionability on this basis. *See TMI, Inc. v. Brooks*, 225 S.W.3d 783, 797 (Tex. App—Houston [14th Dist.] 2007, pet. denied) (rejecting substantive unconscionability defense as to alleged requirement for AAA to arbitrate dispute when alternative dispute resolution method was available and plaintiffs presented no evidence that they would be required to submit to AAA arbitration).

### 3. Cost of arbitration

The homeowners also contend that "compared to the cost of litigation, the cost of arbitrating this case is unconscionable." To support their argument, they compared the cost of filing fees in the court, $360.50, with Construction Industry Arbitration Rules initial filing fee of $7,000 for a dispute valued at over $1 million. They argue that they would be required to bear the expense of up to 81 different arbitrations, including the costs of arbitrator fees, reporting services, and hearing room rentals.

In the trial court, the homeowners' evidence consisted of copies of a Type 1 and Type 2 contract, their original petition, the AAA Home Construction Arbitration Rules, the Construction Industry Arbitration Rules, and the AAA administrative fee schedule. The homeowners' original petition stated: "Plaintiff seeks monetary relief over $1,000,000.00." It does not specify whether the alleged amount of damages is an aggregate of all their claims or is an estimate of each of their claims.

We agree that arbitration costs may render contractual arbitration unenforceable if the costs prevent a litigant from effectively vindicating his or her rights in the arbitral forum. *Olshan Found. Repair*, 328 S.W.3d at 893; *see Green Tree*, 531 U.S. at 90. But the party opposing arbitration nevertheless must come forward with evidence demonstrating that the costs of arbitration make it an inaccessible forum. The homeowners failed to do this. They provided no evidence that would allow a court to compare the "total costs" of litigation and arbitration, which the Texas Supreme Court has said is "the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Olshan Found. Repair*, 328 S.W.3d at 894–95. The record includes no evidence about the individual homeowners' ability to pay the arbitration fees and costs, the amount of damages sought be each homeowner, or the actual cost of arbitration based on invoices, expert testimony, affidavits, or reliable cost estimates. *See id.* Without such evidence, the homeowners' arguments are no more than speculation about possible harm, which is insufficient to establish unconscionability. *See Green Tree*, 531 U.S. at 91; *Venture Cotton Co-op.*, 435 S.W.3d at 231–32.

We conclude that the trial court could not properly deny arbitration under the Type 1 arbitration agreement on the basis of the substantive unconscionability as argued by the homeowners.

**B. Type 2 arbitration agreement**

The homeowners contend that the Type 2 arbitration agreement is substantively unconscionable because it allowed Darling Homes to choose whether to proceed under the TAA or the FAA and because it did not specify that the AAA's Home Construction Arbitration Rules apply. They also make the same argument about the unfair and prohibitive cost of arbitration under the Type 2 arbitration agreement.

As we have explained, the Type 2 arbitration agreement expressly delegates questions of enforceability and defenses to enforceability to the arbitrator. For that reason, none of the homeowners' substantive unconscionability arguments as to the Type 2 arbitration agreement can justify the trial court's denial of arbitration of claims made for houses built pursuant to the Type 2 contracts. *See RSL Funding*, 569 S.W.3d at 121.

Moreover, the homeowners' substantive unconscionability arguments would fail even in the absence of the provision delegating substantive arbitrability to the arbitrator. The provision regarding application of the TAA or the FAA that the homeowners challenge is the same grammatically nonsensical language that we analyzed, *supra*. For the same reasons we would conclude that the contract does not permit Darling Homes to unilaterally determine whether to proceed under the TAA or the FAA. To the extent that the homeowners contend that Type 2 arbitration agreement grants Darling Homes a unilateral right to select the law applicable to the

26

parties' arbitration, we note that the Type 2 contract includes an express choice-of-law provision stating that the contract as a whole is "governed by the laws of the State of Texas."

The Type 2 arbitration agreement specifies that arbitration will be conducted pursuant to the arbitration rules and procedures of the AAA in effect at the time the arbitration request is submitted. The homeowners contend that the failure to specify that the AAA Home Construction Arbitration Rules would govern disputes is in itself unconscionable. The homeowners suggest that, based on the AAA's rules, they would be required to submit to arbitration under the AAA's Commercial Arbitration Rules because the contract did not specify the use of the Home Construction Arbitration Rules. But they have provided no evidence that demonstrates how or why the use of rules other than the AAA Home Construction Arbitration Rules would be unfair. Accordingly, the homeowners did not meet their burden to demonstrate substantive unconscionability.

Finally, the homeowners' argument that arbitration under the Type 2 arbitration agreement is unfairly expensive fails for lack of evidence, as we concluded with regard to the same argument made about the Type 1 arbitration agreements.

## Conclusion

Because valid arbitration agreements govern the claims against Darling Homes, we hold that the trial court abused its discretion by denying the motion to compel arbitration. We reverse the trial court's order denying the motion to compel arbitration. We remand to the trial court for entry of an order compelling the parties to arbitrate and staying the proceedings pending completion of the arbitration.

Peter Kelly
Justice

Panel consists of Justices Kelly, Landau, and Hightower.